PEOPLE v LESTER

Docket No. 99072. Submitted May 4, 1988, at Grand Rapids. Decided November 8, 1988.

Kenneth C. Lester was convicted of armed robbery and possession of a firearm during the commission of a felony, Wexford Circuit Court, William R. Peterson, J. Defendant appealed, alleging error in the trial court's failure to suppress evidence of his two prior armed robbery convictions, in the failure to remove from a taped conversation played to the jury reference to defendant's unrelated criminal activity, and in allowing the jury to have a transcript of the taped conversation without verifying its accuracy.

The Court of Appeals *held:*

1. The court erred in admitting evidence of defendant's two prior armed robbery convictions. They were highly prejudicial and had little bearing on the issue of veracity.

2. Evidence of prior misconduct must meet four requirements: 1) there must be substantial evidence that the defendant actually committed the misconduct; 2) the prior misconduct must tend to prove one of the statutory elements of the crime; 3) proof of the defendant's motive, scheme, intent, plan, system, or absence of mistake or accident must be material to a determination of guilt; and 4) the probative value of the evidence must outweigh its prejudicial impact. The court erred in failing to remove references to unrelated crimes of defendant in the taped conversation played to the jury.

3. The court erred in allowing the jury to see an unverified transcript of the taped conversation. Transcripts of taped conversations may be shown to the jury in a criminal trial where the accuracy of the transcript is assured either by stipulation of the parties or by verification by the transcriber and independent judicial verification.

Reversed.

REFERENCES

Am Jur 2d, Evidence §§ 298 *et seq.,* 320 *et seq.,* 436.

Am Jur 2d, Witnesses §§ 569 *et seq.*

Right to impeach credibility of accused by showing prior conviction, as affected by remoteness in time of prior offense. 67 ALR3d 824.

Admissibility of sound recordings in evidence. 58 ALR2d 1024.

1. CRIMINAL LAW — IMPEACHMENT — PRIOR CONVICTIONS.

    Evidence of prior convictions may be introduced to impeach a witness where its probative value on the issue of veracity outweighs its prejudicial effect; in determining the probative value, the court should consider only the age of the crime and whether the crime is indicative of veracity and, in determining the prejudicial effect, the court should consider the similarity of the prior crime to the charged offense and the possible effects on the decisional process if admitting the evidence causes the defendant not to testify.

2. CRIMINAL LAW — EVIDENCE — PRIOR MISCONDUCT.

    Evidence of prior misconduct must meet four requirements to be admissible: 1) there must be substantial evidence that the defendant actually committed the misconduct; 2) the prior misconduct must tend to prove one of the statutory elements of the crime; 3) proof of the defendant's motive, scheme, intent, plan, system, or absence of mistake or accident must be material to a determination of guilt; and 4) the probative value of the evidence must outweigh its prejudicial impact.

3. CRIMINAL LAW — EVIDENCE — TRANSCRIPTS OF TAPED CONVERSATIONS.

    Transcripts of taped conversations may be shown to the jury in a criminal trial where the accuracy of the transcript is assured either by stipulation of the parties or by verification by the transcriber and independent judicial verification.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *David A. Hogg*, Prosecuting Attorney, and *J. Ronald Kaplansky*, Assistant Attorney General, for the people.

State Appellate Defender (by *Peter Jon Van Hoek*), for defendant on appeal.

Before: MacKenzie, P.J., and Shepherd and M. E. Dodge,* JJ.

Per Curiam. Following a four-day jury trial, defendant was convicted of armed robbery, MCL 750.529; MSA 28.798, and possession of a firearm

---

* Circuit judge, sitting on the Court of Appeals by assignment.

during the commission of a felony, MCL 750.227b; MSA 28.424(2). On November 14, 1986, a judgment of sentence was entered imposing a term of imprisonment of twenty-five to fifty years for the armed robbery, with credit for 170 days served, and two years for the felony-firearm conviction, sentences to be consecutive. Defendant now appeals by leave granted. We reverse and remand for a new trial.

On March 9, 1986, a man entered the Woodland Oil Total Station in Manton, Michigan, wearing sunglasses and a sweatshirt with the hood drawn around his face, pointed a gun at the station employee, Scott Weston, and ordered him to put all the paper money in a bag. The man pulled the telephone handset off of the telephone and left with approximately $800 in cash, some checks and the station's bank bags.

Defendant's friend, Jerry Cissne, testified that defendant had called him on the night of the robbery and told him to save the next day's newspaper and that defendant left for Florida the day after the robbery. After returning from Florida defendant told him he robbed the gas station and took the phone off the wall.

Mr. Cissne informed the police of defendant's involvement in the robbery and, pursuant to a search warrant, was fitted with a wireless transmitter, and was taken to see defendant where he was hospitalized for a stab wound received in an unrelated incident. During this visit Mr. Cissne elicited from defendant several incriminating statements. Defendant stated that he had wiped the station's bank bags clean of fingerprints and had thrown them onto the highway. Defendant hid the gun he had used at his grandmother's home and he was going to get rid of the clothing he had worn during the robbery. The tape of this conversation was played for the jury and a transcript

was provided for them to read along while they listened to the tape.

Defendant took the stand and testified that Mr. Cissne had visited him the night of the robbery, offered him money and told him to dispose of two bank bags and a bag of clothes. He said he threw the bank bags out of the car window the next day along the highway. He explained his reluctance to come forward with this information before trial by referring to two previous robbery convictions.

Defendant seeks reversal on several grounds. He first claims that the trial court erred in denying his motion to suppress evidence of his two prior armed robbery convictions. The prior convictions were six and seven years old and they were for crimes similar to the one charged. The prosecutor argues that defendant was the first to raise his two prior convictions and therefore he cannot claim that error was committed when the court allowed the prosecutor to cross-examine him on these matters.

First it should be noted that after a prosecutor has been authorized to impeach a defendant with his prior convictions the defendant may as a strategic matter raise these convictions first during direct examination when the defendant controls the questioning in order to minimize their impact. Additionally, the correctness of a ruling under MRE 609 does not depend on whether other evidence also creates a "bad man" image.

In *People v Allen,* 429 Mich 558; 420 NW2d 499 (1988), the Michigan Supreme Court clarified the balancing test to be used to determine whether a witness-accused may be impeached with evidence of a prior conviction.[1] The court is to determine

---

[1] This aspect of the *Allen* decision does not represent a "clear break" in Michigan jurisprudence, and so it is to be applied retroactively to all cases pending on direct appeal. *Allen, supra* at 609.

whether this evidence is probative on the issue of veracity and whether its probative value outweighs its prejudicial effect. In determining the probative value the court is to consider only the age of the crime and whether the crime is indicative of veracity. In determining the prejudicial effect, the court is to consider the similarity of the prior crime to the charged offense and the possible effects on the decisional process if admitting the evidence causes the defendant not to testify.

In the instant case, the admission of the prior armed robbery convictions to impeach defendant fails to meet the standard set forth in *Allen, supra.* These crimes have little bearing on the issue of veracity as they were primarily assaultive in nature, see *People v Wakeford,* 418 Mich 95; 341 NW2d 68 (1983), and were six and seven years old at the time of trial. See *Allen, supra* at 611. The prejudicial effect of this evidence is enhanced by the similarity of the prior crimes to the crime charged. It should be noted that we believe the use of the prior convictions for impeachment was also defective under our earlier test enunciated in *People v Crawford,* 83 Mich App 35; 268 NW2d 275 (1978). Under both the *Allen* and *Crawford* tests, the trial court abused its discretion in denying defendant's motion to suppress.

Defendant next claims that the trial court erred in failing to remove from his taped conversation with the informant all references to unrelated criminal activity. Defendant objected at trial to the use of large portions of the tape and transcript which indicated that he and Mr. Cissne had committed other crimes. The trial court did sustain the objection as to a small portion of the tape, but allowed other sections to be admitted.

The law clearly favors limiting the use of evidence of prior misconduct, charged or uncharged,

to narrowly described circumstances. *People v Der-Martzex,* 390 Mich 410; 213 NW2d 97 (1973). In *People v Golochowicz,* 413 Mich 298; 319 NW2d 518 (1982), our Supreme Court enunciated four requirements necessary for the admission of prior misconduct. First, there must be substantial evidence that the defendant actually committed the misconduct. Second, the prior misconduct must tend to prove one of the statutory elements of the crime. Third, proof of the defendant's motive, scheme, intent, plan, system, or absence of mistake or accident must be material to a determination of guilt. Finally, the trial court must weigh the probative value of the evidence against its prejudicial impact and exclude it if the latter predominates. *Golochowicz, supra* at 309.

The transcript of the tape of defendant's conversation with Mr. Cissne reveals numerous references that could lead a listener to conclude that both men are bad people who have been engaged in criminal activities in the past. These references tend to divert the trier of fact from an objective determination of defendant's guilt or innocence. *DerMartzex, supra* at 413. This evidence is more prejudicial than probative and thus should have been excluded. Also, in this armed robbery case, proof of defendant's motive, scheme, intent, plan, system or absence of mistake or accident was not material to a determination of guilt. Applying the *Golochowicz* test to these facts, it was error to admit references to the prior bad acts of defendant and Mr. Cissne in the taped conversation.

Defendant further claims that the trial court abused its discretion in allowing the jury to have a transcript of the taped conversation between defendant and Mr. Cissne to read along while they listed to the tape. Defendant argues that the accuracy of the transcript was not established to any

degree of certainty and that it only reflects the subjective impression of the police as to what was said. We agree.

There is no Michigan law directly on point, however, the matter has been considered by other jurisdictions. In *United States v Robinson,* 707 F2d 872 (CA 6, 1983), the Sixth Circuit Court of Appeals, citing *United States v Slade,* 200 US App DC 240; 627 F2d 293 (1980), cert den 449 US 1034; 101 S Ct 608; 66 L Ed 2d 495 (1980), set out, in order, the preferred procedures for ensuring the accuracy and fairness of such transcripts. The first method was by stipulation by the parties. The second method was for the trial court to make an independent determination before trial by checking the transcripts against the tape. The least preferred method was to present the jury with two transcripts, one containing the state's version and the other defendant's. The panel observed that, while this list was not exhaustive, each procedure entailed basic safeguards to ensure reliability. *Robinson, supra* at 876-877.

In *Robinson,* the trial court had given an instruction substantially similar, if somewhat more restrictive, to the instruction given by the trial court in the instant case. The sixth circuit reversed, even though the panel found the instruction adequate, because the transcripts had not been prepared in such a manner as to ensure their reliability.

In the instant case there was no stipulation as to the accuracy of the transcript. It does not appear that the trial court made any determination as to its accuracy. Indeed, two versions of the transcript were prepared, reflecting the differing subjective impressions of the persons listening to the tape. Nor does it appear that the trial court ever listened to the tape until the time the jury

heard it. Nor does it appear from the record that the person who prepared the transcription ever verified its accuracy in court.

The trial court should have taken steps to insure the accuracy of the transcript before it was shown to the jury. In order to guide courts in the future, this Court adopts prospectively the procedure set forth in *Robinson, supra* at pp 878-879:

> We therefore reiterate our preference for using a transcript when the parties stipulate to its accuracy. But in the absence of a stipulation, we hold that the transcriber should verify that he or she has listened to the tape and accurately transcribed its content. The court should also make an independent determination of accuracy by reading the transcript against the tape. Where, as here, there are inaudible portions of the tape, the court should direct the deletion of the unreliable portion of the transcript. This, however, assumes that the court has predetermined that unintelligible portions of the tape do not render the whole recording untrustworthy. Finally, we find submission of two versions of the transcript prejudicial when the tape is significantly inaudible. Such a practice would undoubtedly inspire wholesale speculation by the parties and engender jury confusion. It would be entirely too difficult for the jury to read two separate transcripts while listening to the tape recording. Furthermore, this method is impractical in cases . . . where the defendant has asserted his Fifth Amendment right to remain silent.

Defendant also claims that the trial court erred in the following ways: it failed to suppress the search warrant used to monitor his conversation with Mr. Cissne although the only evidence of the informant's credibility was his polygraph examination relating to a different matter, it found defendant's taped statements to be voluntary and ad-

missible, and it improperly sentenced defendant in considering his possible involvement in other crimes of which he had not been prosecuted or convicted. As to these issues, we find no error.

Reversed.