CITY OF WESTLAND v KODLOWSKI

Docket No. 301774. Submitted April 3, 2012, at Detroit. Decided December 4, 2012, at 9:00 a.m. Leave to appeal sought.

A jury in the 18th District Court, Mark McConnell, J., convicted Jeffrey Kodlowski of resisting arrest in violation of Westland Ordinances, § 62-36(a) and acquitted him of assault and battery. The charges arose from an incident that occurred when defendant's wife called the police to report that defendant had taken her purse, keys, and cell phone and refused to return them. One of the two Westland police officers who responded to her call made antagonistic remarks to defendant upon entering the home. Defendant responded that he would not return his wife's cell phone and either touched or grabbed one of the officers by the arm, and the officers forcibly arrested defendant, striking him on the head and arm with a baton as he struggled to avoid being handcuffed. After the court denied defendant's motion for a new trial, the Wayne Circuit Court, Craig S. Strong, J., denied defendant's motion for oral argument and, in a separate order, affirmed his conviction and sentence. Defendant appealed both orders by leave granted and ultimately paid two filing fees after initially arguing that he was only required to pay one.

The Court of Appeals *held*:

1. Defendant was required to pay two filing fees when filing his application for leave to appeal two separate orders. MCL 600.321 provides that a fee of $375 must be paid to the clerk of the Court of Appeals for an appeal as of right, for an application for leave to appeal, or for an original proceeding. MCR 7.205(A)(1) provides that an application for leave to appeal must be filed within 21 days after entry of the judgment or order appealed, while MCR 7.205(A)(2) addresses when to file applications for leave to appeal an order deciding motions for new trial, reconsideration, or other such relief. Additionally, MCR 7.205(B)(2) specifies the number of copies of the judgment or order appealed that must be submitted with the application. Therefore, an application is to be filed for leave to appeal an order or the judgment that is sought to be appealed. Thus, MCR 7.205 requires that a separate application be filed for each order or judgment appealed. Consequently, although

Court of Appeals Internal Operating Procedure 7.205(B)(7)-1 allows a party to file one application for leave to appeal separate orders for administrative convenience, the fee set forth in MCL 600.321 must be paid for each order being appealed.

2. The circuit court erred by denying defendant an opportunity for oral argument before the appeal from the district court was decided; however, reversal or remand was not required because the error was harmless. MCR 7.101(K) provides that any party who has filed a timely brief on appeal from the district court to the circuit court is entitled to oral argument if the party requests it in boldface type on the title page of the party's brief, and defendant complied with this provision. Given that the Supreme Court has not provided any particular sanction for violations of MCR 7.101(K), however, they are subject to the harmless-error test set forth in MCR 2.613(A), which states that an error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not a ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order unless refusal to take that action appears to the court inconsistent with substantial justice. Further, under MCR 1.105, the rules must be construed to secure the just, speedy, and economical determination of every action and avoid the consequences of error that does not affect the substantial rights of the parties. In this case, the circuit court's failure to allow oral argument was not inconsistent with substantial justice given that courts routinely decide cases and motions without oral argument; that the briefs were required to contain all the arguments, issues, facts, law, and relevant documentary evidence necessary for a proper resolution of the case; and that defense counsel presented oral argument to the Court of Appeals on the same issues that were presented in writing to the circuit court.

3. The district court did not improperly exclude evidence regarding the extent and nature of the injuries that defendant sustained during his arrest, the officers' use of excessive force, or the police department's policies and procedures when employing force. Under MRE 402, all relevant evidence is admissible unless otherwise provided by constitution or court rule. Relevant evidence is evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. It was not an abuse of discretion to exclude evidence that defendant was hospitalized after his arrest or the nature and extent of his injuries because that evidence was irrelevant to determining whether defendant had

committed the charged crimes of assault and battery and resisting arrest. Similarly, evidence regarding the officers' use of excessive force was irrelevant to a determination of whether defendant committed assault and battery or resisted arrest because both charges focused on defendant's conduct, not the conduct of the officers. The police department's procedures, manuals, and policies were properly excluded as inadmissible hearsay evidence. Exclusion of this evidence did not deprive defendant of his right to present a defense. While the right to present a defense is a fundamental element of due process, it extends only to relevant and admissible evidence. Further, defendant was able to introduce evidence, including his testimony, his wife's testimony, and an audio recording of the incident, to support his theory that he was not resisting arrest but, rather, that the officers had fabricated the incident to conceal the excessive force they employed against him at his residence.

4. The district court did not err by excluding the transcript of the audio recording of what transpired at defendant's residence. Before submitting a transcript of an audio recording to a jury, the trial court should take steps to ensure its accuracy. The preferred procedure is to have the parties stipulate the transcript's accuracy. Absent a stipulation, the trial court may verify the transcript's accuracy by relying on the verification of the transcriber, by independently comparing the transcript with the audio recording, or by using other procedures that ensure the reliability of the transcript. The trial court may also decline to admit a prepared transcript and instead allow the jury to determine the contents of the audio recording itself. Because the prosecution refused to stipulate the accuracy of the transcript, the district court acted within its discretion by allowing the jury to determine the content of the audio recording at trial.

5. The district court did not err by failing to suppress the officers' testimony regarding the statements defendant made during his arrest on the ground that defendant had revoked his consent to the officers' presence, rendering their continued presence a Fourth Amendment violation. Because defendant failed to file a pretrial motion to suppress the statements, he had to establish that an error occurred, that the error was plain, and that the plain error affected his substantial rights. Reversal would have been warranted only if the plain, forfeited error had resulted in the conviction of an actually innocent defendant or if an error seriously affected the fairness, integrity, or public reputation of judicial proceedings independently of the defendant's innocence. Both the United States and Michigan Constitutions guarantee the right to be free from unreasonable searches and seizures. While warrantless searches and seizures are

unreasonable per se, there are several exceptions that validate an otherwise unreasonable search and seizure, including voluntary consent that is given freely, intelligently, specifically, and unequivocally. Consent may be limited in scope, may be revoked, and is valid if obtained from the person whose property is to be searched or from a third party that has common authority over the property. An occupant who is present on the premises may invalidate the consent given by another occupant by expressly objecting to the search if the police are entering to search for evidence; however, an occupant's withdrawal of consent does not preclude officers from continuing to investigate cases of potential domestic violence. In this case, defendant's withdrawal of consent was irrelevant to the Fourth Amendment analysis because the officers were responding to a domestic dispute and therefore had an obligation to investigate potential domestic violence. Consequently, defendant's decision to revoke his consent did not render the officers' presence unlawful, and defendant failed to establish that admitting the statements constituted a plain error affecting his substantial rights.

6. *People v Moreno*, 491 Mich 38 (2012), which held that the Legislature had not abrogated the common-law right to resist an unlawful arrest and overruled the contrary holding in *People v Ventura*, 262 Mich App 370 (2004), applies only to cases in which the defendant has either preserved the issue in the trial court and raised it on appeal or can show that plain error occurred. To determine whether a decision applies with full retroactive effect, courts consider whether prosecutors and trial courts relied on the previous rule in making decisions about whether to charge or convict and whether applying the decision retroactively would undermine the interest in finality of convictions and disrupt the effective administration of justice. If so, a ruling may be applied to only those cases in which the defendant had raised the exception on appeal and preserved the issue in the trial court or was entitled to relief because of a plain error affecting the defendant's substantial rights. *Moreno* was given limited retroactive application because prosecutors, defendants, and trial courts had relied on *Ventura* in making decisions affecting charging, trial strategy, and guilt or innocence, and applying *Moreno* to all cases would detrimentally affect the effective administration of justice. *Moreno* did not apply in this case given that defendant never raised the defense that he was resisting an arrest that was unlawful because the officers used excessive force and in fact testified that he did not resist the officers, a position completely at odds with an available defense under *Moreno*.

Affirmed.

Judge SHAPIRO, dissenting, would have reversed and remanded for a new trial on the charge of resisting arrest to determine whether the underlying arrest was lawful as required under *Moreno*, noting that the only justification the officers described for initiating the physical contact with defendant was the need to arrest him for the alleged assault that the jury concluded did not occur and further noting that defendant could not have preserved this issue for appeal given that the jury would not have been permitted to consider it under *Ventura*. Judge SHAPIRO would have held that retroactive application of *Moreno* was proper in this case given that the trial court plainly erred by failing to instruct the jury that a necessary element of resisting arrest is that the underlying arrest was lawful, which affected the substantial right of a defendant to a jury instructed on the elements of the offense as well as the fairness of the proceeding. Judge SHAPIRO further stated that because a failure to instruct the jury on an element of the offense is a form of structural constitutional error that undermines the entire legal process, *Moreno* was precisely the type of ruling that is always given retroactive effect.

1. APPEAL — APPLICATIONS FOR LEAVE TO APPEAL — FEES.

   MCL 600.321 requires that a fee be paid to the clerk of the Court of Appeals for an appeal as of right, for an application for leave to appeal, or for an original proceeding; this fee must be paid for each order being appealed regardless of whether only one application was filed.

2. APPEAL — CIRCUIT COURTS — RIGHT TO ORAL ARGUMENT — VIOLATIONS OF RIGHT TO ORAL ARGUMENT — REMEDIES.

   MCR 7.101(K) provides that a party who has filed a timely brief on appeal from the district court to the circuit court is entitled to oral argument if the party requested it in boldface type on the title page of the party's brief; violations of a party's right to oral argument under MCR 7.101(K) are not grounds for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order unless refusal to take that action appears to the court inconsistent with substantial justice.

3. EVIDENCE — RELEVANCE — ASSAULT AND BATTERY — RESISTING ARREST — EVIDENCE OF POSTARREST INJURIES — RIGHT TO PRESENT A DEFENSE.

   Under MRE 402, all relevant evidence is admissible unless otherwise provided by constitution or court rule; relevant evidence is evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence; evidence of

a defendant's postarrest injuries is irrelevant to determining whether the defendant resisted arrest or committed an assault or battery; the right to present a defense extends only to relevant and admissible evidence.

4. EVIDENCE — TRANSCRIPTS OF AUDIO RECORDINGS — ACCURACY OF TRANSCRIPTS.

A court should take steps to ensure the accuracy of a transcript of an audio recording before submitting the transcript to the jury; the preferred procedure is to have the parties stipulate the transcript's accuracy; absent a stipulation, a court may verify a transcript's accuracy by relying on the verification of the transcriber, by independently comparing the transcript with the audio recording, or by using other procedures that ensure the reliability of the transcript; a court may decline to admit a prepared transcript and instead allow the jury to determine the contents of an audio recording itself.

5. CONSTITUTIONAL LAW — SEARCHES AND SEIZURES — WARRANTLESS SEARCHES AND SEIZURES — CONSENT — WITHDRAWALS OF CONSENT — WARRANTLESS INVESTIGATIONS OF DOMESTIC VIOLENCE.

The United States and Michigan Constitutions guarantee the right to be free from unreasonable searches and seizures; warrantless searches and seizures are generally unreasonable per se; an otherwise unreasonable search and seizure may be rendered valid by voluntary consent that is given freely, intelligently, specifically, and unequivocally; consent may be limited in scope, may be revoked, and is valid if obtained from the person whose property is to be searched or from a third party that has common authority over the property; an occupant who is present on the premises may invalidate the consent given by another occupant by expressly objecting to the search if the police are entering to search for evidence; an occupant's withdrawal of consent, however, does not preclude officers from continuing to investigate cases of potential domestic violence (US Const; Am IV, Const 1963, art 1, § 11).

*Fausone Bohn, LLP* (by *Keith W. Madden* and *Michael M. McNamara*), for the city of Westland.

*The Corriveau Law Firm, P.C.* (by *Joseph P. Corriveau*), for Jeffrey Kodlowski.

Before: MARKEY, P.J., and MURRAY and SHAPIRO, JJ.

MURRAY, J. Defendant, Jeffrey Kodlowski, appeals by leave granted two orders of the circuit court. The first

order embodies the circuit court's decision affirming the district court's judgment convicting defendant of resisting arrest in violation of Westland Ordinance, § 62-36(a), while the second order denies defendant's motion for reinstatement of oral argument. We affirm both orders.

## I. FACTS AND PROCEEDINGS

This case arises from a marital dispute that resulted in the arrest of defendant after he allegedly battered two Westland Police Officers, Michael Little and Kyle Dawley, and resisted arrest in his Westland residence. On March 18, 2009, Marilyn Kodlowski resided with defendant (her husband), son, and daughter in the city of Westland. Around 4:00 a.m., Kodlowski and defendant had a disagreement regarding Kodlowski's cellular telephone. Defendant accused Kodlowski of having an extramarital affair, and he wanted to see Kodlowski's cellular telephone to determine to whom she had been talking.

Kodlowski called the Westland Police Department on two occasions that morning to seek assistance in retrieving the personal belongings that defendant withheld from her. After calling the police the first time, Kodlowski handed defendant the phone, defendant spoke with the police, and then defendant provided Kodlowski her keys and purse, but not her cellular telephone. Kodlowski called the second time to receive assistance in retrieving her cellular telephone from defendant.

After the second phone call, Little and Dawley arrived at the residence in uniform and located Kodlowski in the driveway near her van. When first speaking with the officers, Kodlowski informed them that she had had an argument with defendant and that he accused her of

cheating on him, but there had never been violence in the home and defendant had not been drinking. There was conflicting testimony as to whether Kodlowski informed the officers that there were no weapons in the residence.

After speaking with the officers, Kodlowski walked with the officers to the residence and defendant "allowed them in." Again, there was conflicting evidence regarding defendant's demeanor when the officers first entered the house. Nevertheless, the officers proceeded to talk to defendant and inquire into the location of the cellular telephone. Although the testimony was not consistent on what was initially said upon entering the home, there is no dispute that Officer Dawley made several antagonistic and sarcastic remarks to defendant, and that when defendant was asked where the cellular telephone was located, defendant responded by saying something along the lines of, "I'm not giving the phone back. You'll have to arrest me."

In order to control the situation, Little instructed defendant to sit down in a chair, after which, according to Little, defendant changed his mood from irritated to calm. At one point, defendant became irritated, stood up and attempted to go to the back bedroom. Little, however, instructed defendant to stay in the chair. Little observed that when defendant stood up, "[h]e looked irritated. He had [a] clenched fist down at his side and on and off would tighten his neck and jaw muscles and he just looked mad and upset." Little then placed his arm on defendant's chest to keep defendant at a distance and to keep defendant from going to the back bedroom. As Little spoke with defendant, Dawley walked with Kodlowski around the house looking for the cellular telephone.

According to Kodlowski, defendant asked the officers to leave. While the officers were present, Kodlowski grabbed defendant's wallet and told him that she would take his wallet if he did not return her cellular telephone. However, Kodlowski then decided to leave the residence without her phone. Little believed at that point that the incident was over, so he followed Kodlowski toward the front door as Dawley followed. As Little was walking out of the door, he felt defendant grab and squeeze his left arm. As witnessed by Dawley, defendant then "spun" Little around so that he was facing defendant. Little then used his arm to create distance between himself and defendant, and after telling defendant that he was under arrest, Little and Dawley each grabbed onto one of defendant's arms so that he could be handcuffed.

Defendant then "started pulling and just kind of thrashing his body, swinging his arms to try to make [Little] let go." Little indicated that as defendant twisted and attempted to break from the officers' grip, the officers and defendant ended up on the couch. Dawley then instructed defendant to stop resisting, but defendant continued to thrash his body and swing his arm. While trying to secure defendant in handcuffs, defendant kicked backward, "like a rearward kick," striking Dawley.

After defendant continued to twist, Dawley applied a brachial stun to defendant's neck, yet defendant continued to twist and fight the officers Dawley then pulled out his baton and struck defendant on his arm and the top of the baton "also hit the back of [defendant's] head." Dawley testified that after he struck defendant's arm, defendant released his grip, Officer Dawley dropped the baton, grabbed the handcuffs, and the officers were then able to secure defendant with the

handcuffs. Dawley indicated that he struck defendant once with the baton.[1] Both Kodlowski, who "could see everything that was going on" and defendant testified that defendant was not resisting when Dawley instructed defendant to "stop resisting." Defendant in fact testified that he never offered any resistance to the officers and never engaged in physical contact with them.

The prosecutor filed a motion in limine in the district court, seeking to exclude evidence regarding the nature and extent of defendant's injuries and any documentary evidence concerning the department policy on the use of force. Defendant argued that the evidence was relevant to show that the officers fabricated the facts of the case to cover up their use of excessive force, while the prosecution argued that the evidence would be relevant to a civil claim for excessive use of force, not to any issues in the criminal case.

The prosecution also separately raised the issue of the admissibility of a transcript prepared from an audio recording which captured a portion of the events surrounding defendant's arrest.[2] Apparently defense counsel intended to either have the transcript read to the jury, or have the jury read the transcript while listening to the audio recording. The prosecution's position was that the transcript was inaccurate and therefore inadmissible. The district court indicated that it would be for the jury to determine the content of the audio

---

[1] Defendant alleges in his brief on appeal that the officers "inflicted a large gash several inches long on the back of his head, which required . . . emergency medical attention . . . ." As will be discussed later in this opinion, the trial court excluded from trial any evidence regarding the extent and nature of defendant's injuries.

[2] During defendant's arrest, one of the officers was wearing a lapel recording device.

recording, and that it could do so through the playing of the audio recording for the jury.

In regard to the prosecution's motion to exclude evidence, the district court concluded that because defendant was charged with assault and battery along with resisting arrest, any evidence regarding the treatment and nature of defendant's injuries was irrelevant and thus inadmissible. The district court indicated, however, that it would allow defendant to introduce evidence that he was injured during the exchange. The district court then decided to withhold until trial its final ruling of whether to exclude documentary evidence regarding department policy, procedures, and records, as well as any expert testimony, concerning the use of force. At trial the court made its ruling:

> Based on the testimony that -- that I've heard so far, we've -- we've had — we've had four people that were in the room. We've heard from three of them. Defense did indicate earlier that the Defendant would be testifying. Obviously, he doesn't -- you don't have to be held by that, but I think so far I would find that -- that testimony from an expert on the use of force and force scale -- continuum scale, I don't think would assist the trier of fact to understand the evidence or to determine a fact and [sic] issue.
>
> Furthermore, we have audio from the incident that's already been played for the Jury, so I think . . . all of the facts that led to these charges have been heard by the Jury and I think that they can make a determination based on the law and the facts that we've gotten from the witness stand so far without any need for any technical or expert assistance.

On October 5, 2009, the jury found defendant not guilty of the assault and battery charges but guilty of resisting arrest. The district court's judgment of conviction was appealed to the circuit court, which denied oral argument on the appeal and affirmed the convic-

tion. Defendant then filed an application for leave to appeal both orders, which we granted.

II. ANALYSIS

A. FILING FEE

In our order granting defendant leave to appeal, we directed defendant to "address in his brief why he should not be required to pay an additional entry fee for the second order being appealed under MCL 600.321(1)(a)." *People v Kodlowski,* unpublished order of the Court of Appeals, entered August 31, 2011 (Docket No. 301774). We did so because when filing his application from the two separate orders, defendant refused to pay two filing fees, arguing that this Court's Internal Operating Procedure (IOP) regarding fees applicable to appeals (which requires two separate fees) misinterprets MCL 600.321.[3]

MCL 600.321, which governs the taxation of costs and fees for appeals to this Court, provides in relevant part:

(1) The following fees shall be paid to the clerk of the court of appeals and may be taxed as costs if costs are allowed by order of the court:

(a) For an appeal as of right, for *an* application for leave to appeal, or for an original proceeding, $375.00. This fee shall be paid only once for appeals that are taken by multiple parties from the same lower court order or judgment and can be consolidated. [Emphasis added.]

IOP 7.205(B)(7)-1, which interprets MCL 600.321, provides that a fee must be paid for each order appealed:

---

[3] After oral argument before this Court defendant paid a second filing fee, with our instruction that if he should prevail the second fee would be immediately returned.

The entry fee is set by statute, MCL 600.321. Presently, the fee is $375. *When multiple orders on the merits are appealed, the entry fee is $375 for each order being appealed* (an order denying rehearing is not an order on the merits). However, only a single fee is required when the application for leave to appeal is from a final order, as defined by MCR 7.202(6)(a)(i), that could have been appealed of right and when the application seeks review of the multiple orders entered at the same time or prior to the final order. If the clerk's office determines that an inadequate entry fee was submitted, the outstanding amount will be requested by letter. Fee payment may be made by personal or corporate check or money order. [Emphasis added.]

Defendant argues that the use within MCL 600.321 of the singular "an" prior to indicating the manner of appeal indicates that a party is required to pay one fee for each appeal, regardless of the number of orders appealed, as long as the orders form the basis for the application for leave to appeal.

Defendant's argument is too limited: it ignores the corresponding court rules regarding applications for leave to appeal. In particular, MCR 7.205(A)(1) provides that "[a]n application for leave to appeal" must be filed within 21 days after entry of "*the* judgment or order" appealed from, while MCR 7.205(A)(2) addresses when to file applications from "*an* order" deciding motions for new trial, reconsideration, or other such relief. (Emphasis added.) Additionally, MCR 7.205(B)(2) specifies the number of copies of "*the* judgment or order appealed from" that need to be submitted with the application. (Emphasis added.)

Consequently, under our rules regarding applications for leave to appeal, an application is to be filed from "an" order or "the" judgment that is sought to be appealed. Thus, strictly applied, MCR 7.205 requires that a separate application be filed for each order or

judgment appealed.[4] But, under IOP 7.205(B)(7)-1, the Court has permitted the filing of one application seeking to appeal separate orders, but the statutory requirement of one filing fee per order is still enforced. In other words, rather than requiring separate applications challenging each separate order with a fee for each one, for administrative convenience (to both the parties and the Court) the Court has opted to allow one application to challenge multiple orders, but the statutory fee requirement has and must remain intact. Because defendant has now filed two fees for his challenge to the two separate orders, we have jurisdiction to decide both issues. We now turn to that task.

### B. ORAL ARGUMENT

Turning to the first issue, defendant argues and we agree that the circuit court erred in denying defendant an opportunity for oral argument before the appeal from the district court was decided.[5] We review de novo the interpretation and application of a court rule. *People v Buie*, 285 Mich App 401, 416; 775 NW2d 817 (2009).

MCR 7.101 governs the general procedure applicable to appeals from the district court to the circuit court, and under MCR 7.101(K), "any party who has filed a timely brief on appeal and requested oral argument is entitled to oral argument." *In re Attorney Fees of Mullkoff*, 176 Mich App 82, 88; 438 NW2d 878

---

[4] Except, as indicated by IOP 7.205(B)(7)-1, when the application is filed from a final order, as case law provides that all interlocutory orders entered prior to the final order can be challenged in an appeal from the final order. See *People v Torres*, 452 Mich 43, 59; 549 NW2d 540 (1996).

[5] We note that the court rule on appeals to the circuit court was amended effective May 1, 2012, and that under the new rules a circuit court can under certain circumstances dispense with oral argument. MCR 7.114(A). This new rule does not apply to this case.

(1989). MCR 7.101(K) specifically provides that, "[a] party who has filed a timely brief is entitled to oral argument by writing 'ORAL ARGUMENT RE-QUESTED' in boldface type on the title page of the party's brief." Thus, the direct and plain language of MCR 7.101(K) requires the circuit court to provide a party with an opportunity to present an oral argument if it complies with MCR 7.101(K) by requesting oral argument when filing a brief on appeal. *People v Williams*, 483 Mich 226, 232; 769 NW2d 605 (2009) (courts must enforce the plain language of a court rule). Because defendant complied with this provision, the circuit court erred in denying defendant's motion for reinstatement of oral argument.

The failure to provide oral argument as required by MCR 7.101(K) does not require reversal or a remand. Generally, this Court will not impose a sanction for a violation of a court rule where the Supreme Court has not provided for any particular sanction, *In re Jackson*, 199 Mich App 22, 28-29; 501 NW2d 182 (1993); *In re Kirkwood*, 187 Mich App 542, 545-546; 468 NW2d 280 (1991), and since the Supreme Court did not provide a sanction or remedy for violation of MCR 7.101(K), we refrain from imposing a specific remedy for the violation.[6] Instead, such a violation raises the harmless error test set forth in MCR 2.613(A), which states:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

---

[6] In *Moore v Spangler*, 401 Mich 360, 368-371; 258 NW2d 34 (1977), the Court held that the failure to provide oral argument does not violate a party's right to due process.

Further, this Court must construe the rules "to secure the just, speedy, and economical determination of every action and to avoid the consequences of error that does not affect the substantial rights of the parties." MCR 1.105. In applying MCR 2.613(A), we reach the inescapable conclusion that the failure of the circuit court to allow oral argument was not inconsistent with substantial justice. This holds true for two reasons.

First, the inability to present oral argument is not a significant detriment to success on appeal. Indeed, our Court and the Supreme Court have the ability to—and do—decide cases without oral argument on a routine basis. See MCR 7.214(E); MCR 7.302(H). So do circuit courts when deciding motions. MCR 2.119(E)(3). Briefs filed with our Court or the circuit court should contain all of the arguments, issues, facts and law necessary for a proper resolution of the case. See MCR 7.212(C); MCR 2.119(A)(2). Additionally, briefs should have relevant documentary evidence attached as exhibits. Thus, by reading the briefs the court should already know each party's position and the reasons why that position should prevail on appeal. Assuming such a proper brief was filed on appeal—as it was in this case when defendant filed his appeal to the circuit court—missing out on 15 or 30 minutes of argument will not be inconsistent with substantial justice. Indeed, if the brief is written and prepared as it should be and the party is entitled to prevail under the law, that party must succeed, whether the party had oral argument or not. Second, we point out that defense counsel did present oral argument to this Court on the same issues that he presented in writing to the circuit court, and so any loss of oral argument below was harmless.

### C. EVIDENTIARY ISSUES

Defendant also argues that the trial court improperly excluded (1) evidence regarding the extent and nature of injuries he sustained during his arrest, (2) evidence regarding the use of excessive force, and (3) evidence regarding the police department's policies and procedures when employing force. Specifically, defendant argues that this evidence is relevant to show that the officers employed excessive force and that in order to conceal the use of such force, the officers fabricated the charges against defendant.

We will not disturb a trial court's decision to exclude evidence unless it is established that it abused its discretion. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Decisions regarding the admission of evidence frequently require a review de novo since they generally involve preliminary questions of law. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). If a trial court admits evidence that as a matter of law is inadmissible, it abuses its discretion. *Id.* Ordinarily, however, a trial court's decision on a close evidentiary question cannot be an abuse of discretion. *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000).

Under MRE 402, all relevant evidence is admissible unless otherwise provided by constitution or court rule. *People v Small*, 467 Mich 259, 264; 650 NW2d 328 (2002). "Relevant evidence" is evidence which has " 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *People v Crawford*, 458 Mich 376, 388; 582

NW2d 785 (1998), quoting MRE 401. It was not an abuse of discretion to exclude evidence of the defendant's hospitalization after his arrest because that evidence was irrelevant to determining whether defendant committed the charged crimes of assault and battery and resisting arrest. *People v Solak*, 146 Mich App 659, 674; 382 NW2d 495 (1985). Similarly, evidence regarding the extent and nature of defendant's injuries, along with evidence regarding the use of excessive force, is irrelevant to a determination of whether defendant committed the crime of assault and battery or resisting arrest.[7] The extent of defendant's injuries or whether the officers employed excessive force does not make it any less or more probable that defendant battered the officers or resisted arrest. Both charges focus on the conduct of defendant, not on the conduct of the officers. Therefore, we conclude that even if the officers employed excessive force, it is irrelevant to prove or disprove that defendant battered the officers or resisted arrest. As both trial courts correctly noted, this evidence may well be relevant in a civil matter where the jury has to determine whether the force employed by the officers was reasonable, see *Alexander v Riccinto*, 192 Mich App 65; 481 NW2d 6 (1991); *Guider v Smith*, 157 Mich App 92; 403 NW2d 505 (1987), aff'd 431 Mich 559 (1988),[8] but it is not in this case because what happened after the crimes would have been committed is not relevant to whether the crimes were committed.

---

[7] Westland Ordinances, § 62-36(a), which governs resisting arrest, states, "No person shall resist arrest, or physically obstruct an arrest, by any officer empowered to make arrests." Westland Ordinances, § 62-67, which governs battery, states in relevant part, "No person shall with force or violence touch or put some substance in motion which touches another person or something closely connected with another person."

[8] While the evidence proving that the officers employed excessive force may be slightly relevant to show that the officers used greater force than indicated at trial, which would undermine the officers' credibility, the

Further, the police department's procedures, manuals, and policies were properly excluded as inadmissible hearsay evidence. *McCallum v Dep't of Corrections*, 197 Mich App 589, 598; 496 NW2d 361 (1992).

We also disagree with defendant's argument that the exclusion of this evidence deprived him of his right to present a defense. While "[t]he right to present a defense is a fundamental element of due process . . . it is not an absolute right" as it extends only "to relevant and admissible evidence." *People v Likine*, 288 Mich App 648, 658; 794 NW2d 85 (2010), rev'd on other grounds 492 Mich 367 (2012). Accordingly, defendant was not deprived of his right to present a defense when denied the opportunity to present irrelevant and inadmissible evidence at trial. Further, defendant was able to introduce evidence, including his testimony, Kodlowski's testimony, and the audio recording, to support his theory that he was not resisting arrest but, rather, that the officers fabricated the incident to conceal the excessive force they employed against him at the residence. Therefore, we conclude that the trial court did not abuse its discretion in excluding evidence regarding the use of force or the extent and nature of defendant's injuries.

Defendant also argues that the trial court erred in excluding the prepared transcript of the audio recording where it would have assisted the jury in determining what transpired at defendant's residence.

Before submitting a transcript of an audio recording to the jury, the trial court should take steps to ensure its accuracy. *People v Lester*, 172 Mich App 769, 775-776; 432 NW2d 433 (1988). The preferred procedure is to

---

trial court did not abuse its discretion in excluding such evidence due to the close nature of the evidentiary question. *Sabin (After Remand)*, 463 Mich at 67.

have the parties stipulate to the transcript's accuracy. *Id.* at 775. Absent a stipulation, the trial court may verify the transcript's accuracy by relying on the verification of the transcriber or by conducting an independent determination by comparing the transcript with that of the audio recording. *Id.* at 776. These procedures are not exhaustive, as the aim is to utilize procedures that ensure the reliability of the transcript. *Id.* at 775. Thus, under certain situations the trial court may find that the best course of action is to allow the jury to determine the contents of the audio recording itself and decline to admit a prepared transcript. This is such a case, as the prosecution refused to stipulate to the accuracy of the transcript. In the absence of a stipulation, the trial court was acting well within its discretion by concluding that it would be best for the jury to determine the content of the audio recording at trial.[9] The district court did not abuse its discretion in excluding the transcript of the audio tape.

Turning to a different sort of evidentiary question, defendant argues that the police officers violated his Fourth Amendment rights by remaining at his residence after he revoked his consent to their presence and, therefore, the officers' testimony regarding defendant's statements made during his arrest should have been suppressed by the district court.

Due to defendant's failure to file a pretrial motion to suppress his statements to police, we review defendant's unpreserved assertion of constitutional error for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To establish plain error, defendant must show that (1)

---

[9] Interestingly, during trial one of the witnesses testified that the transcript contained inaccuracies, and the clarity of the audio recording itself is not such that would lead to a stipulation as to its accuracy.

an error occurred, (2) the error was plain, and (3) the plain error affected his substantial rights. *People v Pesquera*, 244 Mich App 305, 316; 625 NW2d 407 (2001). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error ' "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings" independent of the defendant's innocence.' " *Carines*, 460 Mich at 763, quoting *United States v Olano*, 507 US 725, 736-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993) (citation omitted).

Both the United States and Michigan Constitutions guarantee the right to be free from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 011. While warrantless searches and seizures are unreasonable per se, there are several exceptions that validate an otherwise unreasonable search and seizure, including voluntary consent. *People v Dagwan*, 269 Mich App 338, 342; 711 NW2d 386 (2005). Consent must be given freely, intelligently, specifically, and unequivocally. *Id*. Further, "consent may be limited in scope and may be revoked." *People v Frohriep*, 247 Mich App 692, 703; 637 NW2d 562 (2001). Consent is valid if obtained from the person whose property is to be searched or from a third party that has common authority over the property. *Illinois v Rodriguez*, 497 US 177, 181; 110 S Ct 2793; 111 L Ed 2d 148 (1990). A co-occupant, however, can invalidate the consent given by another occupant if he is present on the premises and expressly objects to the search. *Georgia v Randolph*, 547 US 103, 106; 126 S Ct 1515; 164 L Ed 2d 208 (2006).

While a co-occupant may invalidate another co-occupant's consent in cases where the police are entering to search for evidence, a co-occupant's withdrawal

of his consent to the presence of the police does not preclude officers from continuing to investigate cases of potential domestic violence. *Randolph*, 547 US at 118-119. The United States Supreme Court emphasized that its holding in *Randolph* concerning the powers of a co-occupant to invalidate the consent of another occupant

> has no bearing on the capacity of the police to protect domestic victims. The dissent's argument rests on the failure to distinguish two different issues: when the police may enter without committing a trespass, and when the police may enter to search for evidence. No question has been raised, or reasonably could be, about the authority of the police to enter a dwelling to protect a resident from domestic violence; so long as they have good reason to believe such a threat exists, it would be silly to suggest that the police would commit a tort by entering, say, to give a complaining tenant the opportunity to collect belongings and get out safely, or to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur, however much a spouse or other co-tenant objected. [*Id.* at 118.]

Here, the officers arrived at the residence in the early morning in response to a domestic dispute, having received two calls from Kodlowski regarding disputes with defendant. With respect to defendant's retention of Kodlowski's phone, defendant suspected that Kodlowski was having an affair and he intended to check her phone to determine whether his suspicions were correct. Due to their disagreement, Kodlowski believed that it would be better to leave and discuss the issue later, but she did not want to leave the residence without her cellular telephone, and so called the police a second time. The police arrived at the residence, and after receiving consent from both defendant and Kodlowski, the officers entered the residence to assist in locating the cellular telephone. According to the offic-

ers, when they entered the house, defendant appeared angry and irritated. Little testified that defendant's mood shifted back and forth between irritated and calm. At one point, Kodlowski told the officers that, "I got somebody who will come back with me that'll knock the shit out of him." Clearly a domestic disturbance was occurring while the officers were present in the home.

Later during the incident, defendant asked the officers to leave the residence, thereby revoking his consent. However, in applying *Randolph*, we hold that defendant's withdrawal of consent was irrelevant to the Fourth Amendment analysis given that the officers were present to respond to a domestic dispute. Since the officers were present to respond to a domestic dispute, they had an obligation to investigate potential domestic violence. They were not there to search for evidence. Consequently, defendant's decision to revoke his consent did not render the officers' presence unlawful. Because defendant's Fourth Amendment rights were not violated, defendant has failed to establish plain error affecting substantial rights.

### D. *PEOPLE v MORENO*

After oral argument before this Court, the Supreme Court decided *People v Moreno*, 491 Mich 38; 814 NW2d 624 (2012). Because we had some concern that *Moreno* may impact this case, we ordered supplemental briefing to address two questions: "(1) whether defendant presented (and therefore preserved for appeal) a defense to the resisting arrest charge on the basis of the polices' [sic] allegedly unlawful conduct, and (2) the effect, if any, of [*Moreno*, 491 Mich 38] to this case." *People v Kodlowski*, unpublished order of the Court of Appeals, entered June 4, 2012 (Docket No. 301774).

Turning to the first issue raised in the order, we hold that defendant failed to raise the defense that he resisted an arrest that was unlawful because the officers used excessive force, and so the *Moreno* issue has not been preserved.[10] See *People v Winters*, 225 Mich App 718, 729; 571 NW2d 764 (1997), citing *People v Lee*, 391 Mich 618, 626-627; 218 NW2d 655 (1974), and *People v Daniels*, 163 Mich App 703, 710-711; 415 NW2d 282 (1987). At no time during trial did defendant argue that the case should be dismissed—or that he should be found not guilty— because his actions involved resisting an arrest that was made unlawful because of excessive force used by officers.[11] Nor did he attempt to raise that argument on appeal, either before or after *Moreno* was released. Just as importantly, defendant testified—and defense counsel argued to the jury—that he *never* resisted the officers. To now argue that he did resist because the arrest was unlawful is contradictory to the record and incompatible with our preservation requirements. Consequently, the issue is not preserved for appeal. *Winters*, 225 Mich App at 729.

Even though defendant never argued that he was resisting an unlawful arrest, the dissent argues that defendant should have use of *Moreno* by giving it full retroactive effect.[12] However, controlling Supreme

---

[10] Defendant did argue that the police were no longer lawfully in the house at the time of his arrest, so to that extent the argument was preserved. But we have already concluded that the trial court correctly held that the officers were legally present in the home when defendant was arrested.

[11] See *People v Baker*, 127 Mich App 297, 299; 338 NW2d 391 (1983) ("Defendant did not deny that he used force to resist the arrest. Rather, he claimed that the arrest was unlawful in that the degree of force used by the officer was excessive. Those claims, if believed, would have constituted complete defenses to the charge.").

[12] In *Paul v Wayne Co Dep't of Pub Serv*, 271 Mich App 617, 620; 722 NW2d 922 (2006), our Court stated that "judicial decisions are given full

Court precedent provides that *Moreno* should only have limited retroactive application. A situation similar to that presented here was addressed by the Court in *People v Pasha*, 466 Mich 378; 645 NW2d 275 (2002). In *Pasha*, the defendant was convicted of, among other things, carrying a concealed weapon. *Id.* at 379. His conviction was upheld by our Court on the basis of *People v Marrow*, 210 Mich App 455; 534 NW2d 153 (1995), aff'd 453 Mich 903 (1996), which had held that one must lawfully possess a pistol in order to utilize the dwelling house exception contained in the carrying a concealed weapon statute, MCL 750.227(2). *Id.* at 380-381. The *Pasha* Court overruled the seven year old *Marrow* decision on the basis that it added a prerequisite to application of the statute that did not exist. *Id.* at 382-383.

Having overruled the Court of Appeals decision in *Marrow*, the *Pasha* Court then had to determine whether its ruling would apply retroactively. The Court held that because prosecutors and trial courts had relied on *Marrow* in making decisions about whether to charge or convict, applying its decision with full retroactive effect "would undermine the interest in finality of convictions and disrupt the effective administration of justice." *Id.* at 384. Hence, the Court applied its ruling to only those cases in which the defendant had raised the exception on appeal and defendant preserved the issue in the trial court or was entitled to relief under *Carines*, 460 Mich at 750. *Id.*

This same limited retroactive effect has been utilized by the Court in cases even where the issue "goes to the very heart of our jury trial system." *People v Hampton*,

---

retroactive effect, i.e., they are applied to all pending cases in which the same challenge has been raised and preserved." Under this rule, *Moreno* would not apply to this case because defendant did not raise the issue.

384 Mich 669, 676; 187 NW2d 404 (1971). In *Hampton* the Court held that one of its prior decisions mandating that a jury instruction defining the consequences of a finding of not guilty by reason of insanity be read to the jury, *People v Cole*, 382 Mich 695; 172 NW2d 354 (1969), would only apply to those cases where "[t]he issue was properly preserved for appeal." *Hampton*, 384 Mich at 679.

In light of *Pasha* and *Hampton*, we conclude that *Moreno* should only apply in cases where the defendant has preserved the issue in the trial court and raised it before our Court, or if the defendant can show plain error under *Carines*. *Pasha*, 466 Mich at 384. Much like in *Pasha*, here prosecutors, defendants and trial courts across the state have relied upon *People v Ventura*, 262 Mich App 370; 686 NW2d 748 (2004), rev'd 491 Mich 38 (2012), in making decisions affecting charging, trial strategy, and determinations of guilt or innocence. To apply *Moreno* to all cases would detrimentally effect the effective administration of justice. Consequently, we employ the limited retroactive principles utilized by the *Pasha* Court. Accord *People v Lorey*, 156 Mich App 731, 734-735; 402 NW2d 84 (1986) (giving a Supreme Court decision that reversed this Court's decision limited retroactive effect and applying it only to cases in which the issue was raised in order to ensure the efficient administration of justice).

In doing so, we hold that defendant has neither raised the issue in our Court,[13] nor did he preserve the issue in the trial court. And, no plain error exists because, as previously discussed, defendant's position in the trial court was that he did not resist arrest at all,

---

[13] In fact, the only reason retroactivity is being addressed is because this Court *sua sponte* raised this issue by requesting briefing from the parties.

a position completely at odds with an available defense under *Moreno*. Consequently, defendant cannot show plain error.

For the reasons expressed, the circuit court's orders are affirmed.

MARKEY, P.J., concurred with MURRAY, J.

SHAPIRO, J. (*dissenting*). I respectfully dissent. After this case was tried, briefs filed and argument heard, the Supreme Court held in *People v Moreno*, 491 Mich 38; 814 NW2d 624 (2012), that a necessary element of resisting arrest is that the underlying arrest was lawful. Because no such determination was made in this case, I would reverse and remand for a new trial on that charge.

Defendant was charged with resisting the officers when they arrested him for assaulting one of the officers. Since the jury found that defendant did not assault an officer, the obvious question is whether the arrest for that alleged assault was lawful. Given the proofs, particularly the police audio recording of all the events, this is far from certain.

The officers were responding to a nonviolent argument between defendant and his wife. Defendant's attitude toward the officers, while not hostile, was sullen and unpleasant. He acted immaturely, and the officers were understandably annoyed with him. However, he had committed no crime, and it is not alleged that he committed any crime until the officers walked past defendant on their way out of the house, at which time defendant made some physical contact with Officer Michael Little. Little testified that defendant grabbed his arm and attempted to forcefully turn him around. Defendant's wife testified that she did not see

this occur, though she was within a few feet of them. Defendant testified that he merely tapped the officer on the arm to get his attention in order to tell him something before the officer left. On the audio recording, the officer is heard to say, "[D]on't touch me," and the defendant responds, "I'm sorry." Little agreed that the defendant apologized and testified that defendant was compliant and stepped back. Little also agreed that his partner, Officer Kyle Dawley, then said, "You know, fuck him, let's take him." The recording does not reveal either officer telling defendant that he was under arrest or asking him to surrender. Instead, on the recording, immediately after Dawley makes this remark, a physical altercation is heard. During that altercation, defendant was struck in the head with a baton and stunned with a Taser.

The only justification for initiating the physical contact with defendant described by the officers was the need to arrest him for the alleged assault on Little, an assault that the jury concluded did not occur. The jury rejected the officers' version of events and found more credible defendant's testimony that he merely tapped the officer on the arm in order to tell him something.[1]

The jury convicted defendant of resisting arrest, but was not instructed, as we now know it should have been, that the arrest had to have been lawful, i.e., with

---

[1] The majority's recitation of the facts adopts the officers' version of events as controlling our decision even though the jury rejected that version as not credible. It also ignores the wife's testimony that before any physical contact occurred, Dawley was making "bullying, sarcastic remarks" to defendant such as "You're an idiot" and "Push my buttons, just try to push my buttons." She also testified that when defendant asked the officers to leave his home, Dawley said, "Try to make me leave, just go ahead and try to make me leave" and that the altercation happened, as can be heard on the tape, a few seconds after defendant asked for the officers' badge numbers.

probable cause, for defendant's actions to constitute the crime of resisting arrest. While the question of defendant's innocence is one that must ultimately be made by a properly instructed jury, listening to the audiotape of the incident makes clear that the central question is whether the officers had probable cause to arrest, an issue that defendant's jury would not have been permitted to consider under *People* v *Ventura*, 262 Mich App 370; 686 NW2d 748 (2004).

The majority declines to address this issue, asserting that it was not properly preserved because at trial defendant did not argue that he should be acquitted because the assault arrest was unlawful. However, this argument would have been not only useless but completely inconsistent with the law as set forth in *Ventura*. The real question is not whether defendant made this then useless argument, but whether *Moreno* is to apply retroactively to all cases still pending on appeal. Clearly the answer to that question is yes, just as it was in *People v Pasha*, 466 Mich 378, 384; 645 NW2d 275 (1987), in which the Supreme Court held that a post-conviction alteration of the elements of the charged offense should be applied retroactively to those cases in which "the defendant either preserved the issue in the trial court or is entitled to relief under [*People v Carines*, 460 Mich 750; 597 NW2d 130 (1999)]." Thus, retroactive application of *Moreno* is proper when the error is plain and affected substantial rights, i.e., either resulted in conviction of an innocent defendant or otherwise seriously affected the fairness or integrity of the proceedings. *Carines*, 460 Mich at 763.

In this case, the error could not be plainer: the trial court failed to include an element of the offense in its instruction. The error affected a substantial right—the right to a jury instructed on the elements of the

offense—as well as the fairness of the proceeding. Indeed, failure to instruct the jury on an element of the offense is a form of constitutional error, *id.* at 766, and it is a structural error that undermines the entire legal process, *People v Duncan*, 462 Mich 47, 57; 610 NW2d 551 (2000). Under *Moreno*, a necessary element of resisting arrest is that the underlying arrest was lawful, and this is precisely the type of ruling that is always given retroactive effect.[2]

Defendant acted in an annoying fashion, and it is not

---

[2] The majority declines to apply *Moreno* despite its relevance to actual innocence because defendant did not request an instruction contrary to then settled law. This ignores the fact that requesting such an instruction could not possibly have yielded anything except the ire of the trial court given that this request would have been contrary to the unambiguous rule set forth in *Ventura*. The purpose of issue preservation is to allow the trial court to have an opportunity to consider an issue and avoid the possibility of an appellate parachute. See *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000). Neither of these interests is even remotely relevant here. First, *Ventura* was clear and controlling; there was no possibility that the trial court would have instructed the jury in plain contravention of a Court of Appeals case that was directly on point. Second, defense counsel could not have been trying to create an appellate parachute given that, at the time of trial, *Ventura* was the law and there was no reason to believe that it would be overruled in a separate case years later. Defendant was convicted on October 5, 2009. *Moreno* was not decided until April 20, 2012, a full 2½ years after that conviction and 5 months after defendant had filed his brief on appeal.

Further, the majority's reliance on *People v Hampton*, 384 Mich 669; 187 NW2d 404 (1971) is highly attenuated. That case did not involve whether the jury was properly instructed on the actual elements of the offense, but whether the jury should have been informed that a verdict of not guilty by reason of insanity would result in the defendant's commitment to a psychiatric hospital, not freedom. Failing to advise a jury what will happen to a defendant after its verdict is far less central to a proper verdict than is informing the jury of the elements of the offense. Moreover, in *Hampton*, there was no controlling caselaw against the defendant's position as *Ventura* was in this case. Indeed, the question in *Hampton* had been "a matter of first impression" less than two years earlier in *People v Cole*, 382 Mich 695; 172 NW2d 354 (1969). *Hampton*, 384 Mich at 678.

surprising that his behavior tested the officers' patience. However, being annoying and testing an officer's patience is not a crime. No one, including police officers, may physically attack another because he or she finds that person annoying. The prosecution at oral argument noted that we expect police officers to go into unpredictable and potentially dangerous situations and asserted that we should therefore not second-guess their actions. However, it is precisely because police officers are routinely sent into such situations that they must be properly trained to maintain a professional demeanor at all times and exercise the force of the state against an individual only when there is a lawful basis to do so, not because the person is irritating or disrespectful to them personally.[3]

---

[3] "[W]e have repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them." *City of Houston v Hill*, 482 US 451, 465; 107 S Ct 2502; 96 L Ed 2d 398 (1987).