*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTHONY ALSTON JACKSON,

Defendant-Appellant.

UNPUBLISHED
February 19, 2019

No. 339898
Wayne Circuit Court
LC No. 16-006045-01-FH

Before: JANSEN, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c, one count of accosting a minor for immoral purposes, MCL 750.145a, and one count of indecent exposure, MCL 750.335a. The jury acquitted defendant of two additional counts of CSC-II. The trial court sentenced defendant to three years' probation. We affirm in part and remand for further proceedings.

The complainant testified that defendant, her mother's live-in boyfriend, began sexually abusing her in 2012, when she was nine years old. According to the complainant, the abuse continued until she was 13 years old. The last incident allegedly occurred in May 2016, when the complainant claimed that defendant touched her breasts and vagina. Defendant was charged with two counts of CSC-II under MCL 750.520c(1)(a) (sexual contact with a person under 13 years of age) for the initial incident in 2012, and two counts of CSC-II under MCL 750.520c(1)(b) (sexual contact with a person at least 13 years old, but less than 16 years old, and a member of the same household) for the last incident in 2016. Defendant was also charged with indecent exposure and accosting a child for immoral purposes for exposing his penis to the complainant in May 2016, and then requesting that she put his penis back in his shorts, which she refused to do.

Defendant testified at trial and denied ever touching the complainant in a sexually inappropriate manner. The defense theory was that the complainant's allegations were not credible, and that the complainant fabricated the allegations because she did not like defendant due to his frequent arguments with the complainant's mother, and because the complainant was

-1-

jealous of the attention that defendant gave to his older daughter, who was similar in age to the complainant, and to the complainant's younger sister, who was the child of defendant and the complainant's mother. The jury acquitted defendant of the two counts of CSC-II related to the initial incident, but found him guilty of the remaining charges.

## I. SUFFICIENCY AND GREAT WEIGHT OF THE EVIDENCE

We begin by addressing defendant's arguments that the trial court erred by denying his motion for a directed verdict of acquittal or a new trial based on the great weight of the evidence.

Defendant was convicted of two counts of CSC-II for violating MCL 750.520c(1)(b)(*i*), which prohibits an actor from engaging in sexual contact with a person between the ages of 13 and 16 years, who was a resident of the same household as the actor. Defendant was also convicted of violating MCL 750.145a, which prohibits a person from accosting, enticing, or soliciting a child under the age of 16 years with the intent to induce or force the child to commit an immoral act, or submit to an act of sexual intercourse or gross indecency, or to any other act of depravity or delinquency. The jury also convicted defendant of indecent exposure, which consists of the knowingly open or indecent exposure of one's person. MCL 750.335a(1).

## A. SUFFICIENCY OF THE EVIDENCE

The trial court did not err by denying defendant's motion for a judgment of acquittal, which was based on the legal sufficiency of the evidence. In reviewing a challenge to the sufficiency of evidence, a reviewing court must view the evidence in a light most favorable to the prosecution and determine whether the evidence was sufficient to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams,* 268 Mich App 416, 419; 707 NW2d 624 (2005). Any conflicts in the evidence must be resolved in favor of the prosecution. *People v Jackson,* 292 Mich App 583, 587-588; 808 NW2d 541 (2011).

The complainant described defendant touching her in her vaginal area and breasts in May 2016, when she was 13 years old and living in defendant's home. Although defendant asserts that the complainant's testimony was not credible and was not corroborated by any physical evidence, it was up to the jury to determine the credibility of the complainant's testimony, and MCL 750.520h provides that "[t]he testimony of a victim need not be corroborated" to convict a defendant of CSC-II. The complainant's testimony, if believed, was sufficient to establish the elements of CSC-II beyond a reasonable doubt. The complainant also described defendant exposing his penis while in the kitchen of the home and asking the complainant to tuck his penis back inside his pants. Again, this testimony, if believed was sufficient to establish the elements of indecent exposure and accosting a child for an immoral purpose. Accordingly, the trial court did not err by denying defendant's motion for a judgment of acquittal based on the sufficiency of the evidence.

## B. GREAT WEIGHT OF THE EVIDENCE

Defendant alternatively argues that the trial court erred by denying his motion for a new trial based on the great weight of the evidence. We review a trial court's decision denying a motion for a new trial for an abuse of discretion. *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of reasonable and principled outcomes. *Id.*

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Musser,* 259 Mich App 215, 218-219; 673 NW2d 800 (2003). Here, defendant argues that the jury's verdict was against the great weight of the evidence because the complainant's testimony was discredited, whereas his testimony denying any sexual misconduct was credible and stood unimpeached. Defendant emphasizes inconsistencies between the complainant's trial testimony and prior statements she made during a Kids-TALK interview and at defendant's preliminary examination.

In *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998), our Supreme Court explained that, absent extraordinary circumstances, issues of witness credibility are for the jury and a reviewing court may not substitute its view of the credibility of the evidence for the jury's determination. The Court stated:

> We reiterate the observation in *Anderson v Conterio*, 303 Mich 75, 79; 5 NW2d 572 (1942), that, when testimony is in direct conflict and testimony supporting the verdict has been impeached, if "it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it," the credibility of witnesses is for the jury.

> Adding flesh to what is a more refined articulation of the formula that " '[i]n general, conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial,' " *United States v Garcia*, 978 F2d 746, 748 (CA 1, 1992), quoting with approval *United States v Kuzniar*, 881 F2d 466, 470 (CA 7, 1989), federal circuit courts have carved out a very narrow exception to the rule that the trial court may not take the testimony away from the jury. *Id*. at 470-471. Defining the exception, the federal courts have developed several tests that would allow application of the exception; for example, if the "testimony contradicts indisputable physical facts or laws," *id*., "[w]here testimony is patently incredible or defies physical realities," *United States v Sanchez*, 969 F2d 1409, 1414 (CA 2, 1992), "[w]here a witness's testimony is material and is so inherently implausible that it could not be believed by a reasonable juror," *Garcia, supra* at 748, or where the witness' testimony has been seriously "impeached" and the case marked by "uncertainties and discrepancies." *United States v Martinez*, 763 F2d 1297, 1313 (CA 11, 1985).

> This does not mean that "[a] judge's disagreement with the jury's verdict," *United States v Arrington*, 757 F2d 1484, 1486 (CA 4, 1985), or a "trial judge's rejection of all or part of the testimony of a witness or witnesses," entitles a

defendant to a new trial. *Sanchez, supra* at 1414. Rather, a trial judge must determine if one of the tests applies so that it would seriously undermine the credibility of a witness' testimony and, if so, is there "a real concern that an innocent person may have been convicted" or that "it would be a manifest injustice" to allow the guilty verdict to stand. *Id*. If the "evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions," the judge may not disturb the jury findings although his judgment might incline him the other way. [*State v Kringstad*, 353 NW2d 302, 307 (ND, 1984)]. Any "real concern" that an innocent person has been convicted would arise "only if the credible trial evidence weighs more heavily in [the defendant's] favor than against it." [*United States v Polin*, 824 F Supp 542, 551 (ED Pa, 1993)]. [*Lemmon*, 456 Mich at 642-645 (footnotes omitted).]

Defendant is correct that most of the evidence offered in support of the charges consisted of the complainant's testimony, and that there was no physical evidence to support the charges. Moreover, the defense successfully demonstrated that there were some inconsistencies between the complainant's accounts of the incidents as described during her Kids-TALK interview or at the preliminary examination, compared to her testimony at trial. The prosecutor argued, however, that the inconsistencies were not material because they were minor, they did not involve the elements of the charged crimes, and the complainant never wavered on critical details of the offenses. Defendant also emphasizes that the complainant admitted being coached by the prosecutor. The complainant agreed that the prosecutor helped her recall events, but she clarified that the prosecutor did not tell her what to say. Defendant also points out that the complainant candidly admitted that she did not like defendant because of the problems in her mother's relationship with him, and because of rivalries with the defendant's other children.

We agree that defendant elicited factors for the jury to consider in evaluating the credibility and reliability of the complainant's testimony, including whether she may have had a motive to falsify her testimony. Defendant also demonstrated some inconsistencies regarding the complainant's recall of events and descriptions of the incidents. We are not persuaded, however, that the complainant's testimony was rendered so patently incredible or inherently implausible, or was deprived of all probative value that it could not be believed. Likewise, the complainant's testimony regarding the actual sexual assaults was not so seriously impeached, implausible, or in defiance of physical realities that the trial court should have disregarded the jury's verdict and granted defendant a new trial. Although defendant contends that his testimony was credible and stood unimpeached, the trial court properly determined that this was for the jury to weigh and decide. In sum, the trial court did not err by deferring to the jury's role in determining the credibility of the witnesses and refusing to disturb the jury's verdict in this regard, and the court did not abuse its discretion by denying defendant's motion for a new trial.

## C. EXCULPATORY EVIDENCE

Within this issue, defendant appears to argue that deficiencies in the police investigation rendered it incomplete, violating his right to due process. We disagree.

A defendant's right to due process requires that the prosecution disclose any material evidence favorable to the defense. *Brady v Maryland,* 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215

(1963); *People v Fox (After Remand)*, 232 Mich App 541, 549; 591 NW2d 384 (1998). Here, defendant does not claim that evidence was suppressed, but rather that evidence was not preserved or developed. When the government fails to preserve evidence whose exculpatory value is indeterminate or only potentially useful, the defendant has the burden of proving that the government acted in bad faith by failing to preserve the evidence. *Arizona v Youngblood*, 488 US 51, 57-58; 109 S Ct 333; 102 L Ed 2d 281 (1988); *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992). But neither the police nor the prosecution has a duty to assist a defendant in developing potentially exculpatory evidence. *People v Anstey*, 476 Mich 436, 461; 719 NW2d 579 (2006). Thus, the bad-faith standard from *Youngblood* does not apply to evidence that has not yet been developed. *Id*.

Defendant claims that the police did not preserve potentially exculpatory evidence. He points out that the police did not tell the complainant's mother to promptly take the complainant in for an examination or to preserve her clothing. This claim involves a failure to determine whether an examination of either the complainant or her clothing might have revealed anything of evidentiary value. Thus, it should be considered a failure to develop evidence rather than a failure to preserve evidence. Regardless, because the case involved only allegations of sexual contact, not sexual penetration or other allegations that might have produced physical evidence, there was no reason for the police to suspect that an examination of the complainant or her clothing would produce anything of evidentiary value. Accordingly, the record does not support a finding that the police acted in bad faith.

Defendant also complains that the police interview of the complainant's mother was inadequate because she was asked only five questions over the telephone. Because defendant does not have a due process right to have the police develop evidence, any inadequacy in this interview does not entitle defendant to relief.

Defendant also complains that the police failed to preserve messages exchanged between the complainant and her friend when the complainant first revealed the allegations about defendant. This subject was explored at length before trial. The record discloses that the text messages that were exchanged between the complainant and her friend were never obtained by the state. Although requests were made to recover them from the company who possessed the information, because neither girl was able to recall her account information at the time the messages were exchanged, the company was not able to recover the messages. Because the evidence was never obtained by the state in the first instance, defendant cannot claim that the police acted in bad faith by failing to preserve the evidence.

## II. EXCLUSION OF EVIDENCE OF THE COMPLAINANT'S SEXUAL KNOWLEDGE OR CONDUCT

Defendant argues that the trial court erred by denying his request to admit evidence of the complainant's sexual behaviors, knowledge, or conduct. A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion, but any preliminary questions of law are reviewed de novo. *People v Mann*, 288 Mich App 114, 117; 792 NW2d 53 (2010).

Defendant sought to introduce testimony from the complainant's older stepsister, who frequently spent the night at the complainant's house. The trial court ordered defendant to file an offer of proof of the proposed testimony, which the trial court read as follows:

> She can testify to [the complainant's] sexual sophistication and preoccupation with things appealing to her prurient interest. She will also be able to testify as to her knowledge of [the complainant's] regular or frequent conduct, statements, practices and interests which reveal her motives, plan, scheme or predispositions to make false statements about the Defendant.

As the prosecution observes, the rape-shield statute, MCL 750.520j, generally bars evidence of a complainant's sexual activity unrelated to the charged conduct. *People v Duenaz*, 306 Mich App 85, 91; 854 NW2d 531 (2014). Although there are exceptions to the statute, and there may be instances where testimony that appears to run afoul of the statute should be admitted to ensure a defendant's right of confrontation, *People v Hackett*, 421 Mich 338, 348; 365 NW2d 120 (1984), defendant's offer of proof was too vague to identify a legitimate purpose for introducing evidence. Defendant sought to offer the stepsister's testimony to show that the complainant was preoccupied with sexual matters, but his offer of proof did not include any examples of such conduct. The offer of proof identified permissible purposes for introducing testimony generally, but it did not include any factual detail suggesting that the witness had knowledge of actual facts that were probative of these purposes. Defendant made no attempt to explain what the proposed testimony would have proven beyond suggesting that the complainant had unspecified knowledge about sexual matters; defendant did not explain what that knowledge might be, nor did he provide a basis to conclude that her knowledge was inappropriate for her age. Against this backdrop, the trial court did not abuse its discretion by excluding the testimony.

## III. TRANSCRIPT OF THE COMPLAINANT'S KIDS-TALK INTERVIEW

Defendant argues that the trial court erred by refusing to allow him to use a transcript of the complainant's Kids-TALK interview to cross-examine the complainant. We review the trial court's decision for an abuse of discretion. See *People v Lester*, 172 Mich App 769, 774; 432 NW2d 433 (1988).

After the complainant disclosed the allegations of defendant's sexual abuse, she participated in a forensic interview at Kids-TALK, which was video recorded. Defendant arranged to have a transcript of the interview prepared by a court reporter and sought to use the transcript at trial to cross-examine the complainant. The prosecutor challenged the accuracy of transcript prepared by defendant, and therefore, objected to defendant's use of it at trial. The trial court declined to allow defendant to use the transcript, but allowed defendant to cross-examine the complainant using a series of video clips from her recorded interview to demonstrate inconsistencies with her trial testimony.

In *Lester*, 172 Mich App at 774-776, this Court addressed the admissibility of transcripts prepared by one party and the steps that should be taken before those transcripts may be used at trial:

There is no Michigan law directly on point, however, the matter has been considered by other jurisdictions. In *United States v Robinson*, 707 F2d 872 (CA 6, 1983), the Sixth Circuit Court of Appeals, citing *United States v Slade*, 200 US App DC 240; 627 F2d 293 (1980), cert den 449 US 1034; 101 S Ct 608; 66 L Ed 2d 495 (1980), set out, in order, the preferred procedures for ensuring the accuracy and fairness of such transcripts. The first method was by stipulation by the parties. The second method was for the trial court to make an independent determination before trial by checking the transcripts against the tape. The least preferred method was to present the jury with two transcripts, one containing the state's version and the other defendant's. The panel observed that, while this list was not exhaustive, each procedure entailed basic safeguards to ensure reliability. *Robinson, supra* at 876-877.

In *Robinson*, the trial court had given an instruction substantially similar, if somewhat more restrictive, to the instruction given by the trial court in the instant case. The sixth circuit reversed, even though the panel found the instruction adequate, because the transcripts had not been prepared in such a manner as to ensure their reliability.

In the instant case there was no stipulation as to the accuracy of the transcript. It does not appear that the trial court made any determination as to its accuracy. Indeed, two versions of the transcript were prepared, reflecting the differing subjective impressions of the persons listening to the tape. Nor does it appear that the trial court ever listened to the tape until the time the jury heard it. Nor does it appear from the record that the person who prepared the transcription ever verified its accuracy in court.

The trial court should have taken steps to insure the accuracy of the transcript before it was shown to the jury. In order to guide courts in the future, this Court adopts prospectively the procedure set forth in *Robinson, supra* at pp 878-879:

> We therefore reiterate our preference for using a transcript when the parties stipulate to its accuracy. But in the absence of a stipulation, we hold that the transcriber should verify that he or she has listened to the tape and accurately transcribed its content. The court should also make an independent determination of accuracy by reading the transcript against the tape. Where, as here, there are inaudible portions of the tape, the court should direct the deletion of the unreliable portion of the transcript. This, however, assumes that the court has predetermined that unintelligible portions of the tape do not render the whole recording untrustworthy. Finally, we find submission of two versions of the transcript prejudicial when the tape is significantly inaudible. Such a practice would undoubtedly inspire wholesale speculation by the parties and engender jury confusion. It would be entirely too difficult for the jury to read two separate transcripts while listening to the tape

recording. Furthermore, this method is impractical in cases . . . where the defendant has asserted his Fifth Amendment right to remain silent.

Although *Lester* involved a transcript that was prepared for the jury to view directly, we believe that the distinction does not make a difference. Defendant wanted to use the transcript to show that the complainant had made statements inconsistent with her trial testimony. Therefore, it was still crucial that the transcript of the Kids-TALK interview accurately represent her statements during that interview. The parties were unable to stipulate to the accuracy of the transcript prepared by the defense. The trial court could have independently reviewed the transcript against the recording and made an independent determination of the accuracy of the transcript. But the overarching goal is a procedure that ensures fairness and accuracy of the matter sought to be presented. *Lester*, 172 Mich App at 774. In lieu of using a transcript, the court permitted the defense to use video clips of the complainant's actual interview to use during cross-examination. Although this procedure entailed some additional preparation and work by defendant to prepare the video clips, the record discloses that defense counsel was able to effectively use the clips to demonstrate that the complainant had made statements in her interview that were inconsistent with her testimony at trial. Defense counsel was also permitted to replay those clips during closing argument.

In sum, because the parties were unable to stipulate to the accuracy of the transcript, and because defendant had an alternative method for introducing relevant portions of the complainant's Kids-TALK interview to enable the jury to determine if her trial testimony was inconsistent with her prior statements during the interview, the trial court did not abuse its discretion by refusing to allow the proffered transcript to be used at trial.

## IV. EXCLUSION OF PRIOR FALSE ACCUSATIONS OF SEXUAL MISCONDUCT

We conclude that the trial court erred by prohibiting defendant from presenting evidence that the complainant had previously made false allegations of sexual misconduct against another person without first conducting an evidentiary hearing to determine the admissibility of this evidence, and that remand for further proceedings and additional findings by the court is necessary.

Before and during trial, the trial court was asked to consider the admissibility of evidence that the complainant had previously made false accusations of sexual misconduct. According to defendant's offer of proof, the complainant had accused a neighbor, CF, of sexual misconduct, but later admitted to both CF and his mother that the accusations were false. The prosecutor argued that the proposed testimony was inadmissible under MRE 608(b), but agreed that defendant could question the complainant about the matter on cross-examination. Defendant argued that exclusion of this testimony would violate his constitutional right of confrontation by preventing him from showing that the complainant, who the defense maintained was not credible, had previously made other false allegations of sexual abuse. After substantial discussions, the trial court excluded the proposed testimony and also barred defendant from inquiring into the matter in his cross-examination of the complainant.

A trial court's decision to admit or exclude evidence is generally reviewed for an abuse of discretion. *Mann*, 288 Mich App at 117. However, whether the trial court's exclusion of proffered testimony violated a defendant's Sixth Amendment right of confrontation is a question of constitutional law, which we review de novo. *People v Fackelman*, 489 Mich 515, 524; 802 NW2d 552 (2011).

The rape-shield statute, MCL 750.520j, generally bars evidence of a complainant's sexual activity unrelated to the charged conduct. *Duenaz*, 306 Mich App at 91. However, a complainant's prior false accusations of sexual assault do not implicate the rape-shield statute, and such evidence may be relevant and admissible to protect a defendant's right to confront his accusers. *People v Jackson*¸ 477 Mich 1019; 726 NW2d 727 (2007); *Hackett*, 421 Mich at 348. As explained in *People v Williams*, 191 Mich App 269, 272; 477 NW2d 877 (1991):

> [T]he rape-shield statute does not preclude introduction of evidence to show that a victim has made prior false accusations of rape. Such false accusations are relevant in subsequent prosecutions based upon the victim's accusations because the fact that the victim has made prior false accusations of rape directly bears on the victim's credibility and the credibility of the victim's accusations in the subsequent case, and preclusion of such evidence would unconstitutionally abridge the defendant's right to confrontation. . . . Thus, to the extent that defendant desired and was able to introduce evidence that the victim made a prior false accusation of rape, and to the extent that the trial court relied upon the rape-shield statute in denying defendant's request, the trial court erred.

Similarly, in *Hackett*, 421 Mich at 348, our Supreme Court stated that "the defendant should be permitted to show that the complainant has made false accusations of rape in the past."

Further, "[a] defendant has a constitutionally guaranteed right to present a defense, which includes the right to call witnesses." US Const, Am VI; Const 1963, art 1, § 20; *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008). The extent of cross-examination is generally left to the trial court's discretion, but there is a "dimension of the Confrontation Clause that guarantees to defendant a reasonable opportunity to test the truth of a witness' testimony." *Hackett*, 421 Mich at 347. But the Confrontation Clause only requires that a defendant be permitted to introduce relevant and admissible evidence. *Id*. at 354. "[T]he accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Yost*, 278 Mich App at 379 (quotation marks and citation omitted). In some circumstances, however, these rights "bow to accommodate other legitimate interests in the criminal trial process." *People v Arenda*, 416 Mich 1, 8; 330 NW2d 814 (1982).

"Evidence which is not relevant is not admissible." MRE 402. Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." MRE 403.

Here, defendant sought to introduce evidence that the complainant had previously falsely accused CF of sexual misconduct. As stated in *Williams*, 191 Mich App at 272, "false accusations are relevant in subsequent prosecutions based upon the victim's accusations because the fact that the victim has made prior false accusations of rape directly bears on the victim's credibility." Witness credibility is always relevant. *People v Coleman*, 210 Mich App 1, 8; 532 NW2d 885 (1995).

In *Hackett*, 421 Mich at 349-351, the Court outlined procedures for a trial court to follow when confronted with evidence involving a complainant's prior sexual conduct:

> The defendant is obligated initially to make an offer of proof as to the proposed evidence and to demonstrate its relevance to the purpose for which it is sought to be admitted. Unless there is a sufficient showing of relevancy in the defendant's offer of proof, the trial court will deny the motion. If there is a sufficient offer of proof as to a defendant's constitutional right to confrontation, as distinct simply from use of sexual conduct as evidence of character or for impeachment, the trial court shall order an *in camera* evidentiary hearing to determine the admissibility of such evidence in light of the constitutional inquiry previously stated. At this hearing, the trial court has, as always, the responsibility to restrict the scope of cross-examination to prevent questions which would harass, annoy or humiliate sexual assault victims and to guard against mere fishing expeditions. *Alford v United States*, [282 US 687, 694; 51 S Ct 218; 75 L Ed 624 (1931)]. Moreover, the trial court continues to possess the discretionary power to exclude relevant evidence offered for any purpose where its probative value is substantially outweighed by the risks of unfair prejudice, confusion of issues or misleading the jury. See MRE 403; *People v DerMartzex*, 390 Mich 410, 415; 213 NW2d 97 (1973); *People v Oliphant*, 399 Mich 472, 489-490; 250 NW2d 433 (1976). We again emphasize that in ruling on the admissibility of the proffered evidence, the trial court should rule against the admission of evidence of a complainant's prior sexual conduct with third persons unless that ruling would unduly infringe on the defendant's constitutional right to confrontation.

We disagree with the trial court's conclusion that defendant's offer of proof was insufficient to meet a threshold showing of relevancy. Defendant's offer of proof indicated that two witnesses would testify that the complainant admitted to accusing CF of inappropriate sexual conduct and admitted to both CF and his mother that the accusation was false. The instant case involved allegations that defendant had engaged in inappropriate sexual contact with the complainant. Defendant denied any inappropriate sexual contact with the complainant. Evidence that the complainant had made a false allegation of sexual touching in the past was relevant to the credibility of her similar allegations here. Unlike the situation in *Williams*, 191 Mich App at 273-274, where the defendant had no basis for believing that a prior accusation was true or false, defendant's offer of proof went beyond a mere fishing expedition because it identified two witnesses who intended to testify that the complainant admitted falsely accusing CF of inappropriate sexual conduct. Defendant's right to confront his accuser should permit him to show that the complainant had made false accusations of sexual contact in the past. *Hackett*, 421 Mich at 348.

We note, however, that the prosecutor disputed the accuracy of defendant's claim that the complainant had actually accused CF of sexual misconduct. According to the prosecutor, it was the complainant's stepsister who spread false rumors of the sexual misconduct, which the complainant denied. Under these circumstances, we believe the trial court should have heard testimony from the witnesses to determine as a threshold matter whether there was evidence that the complainant actually made false accusations of sexual misconduct. See *Jackson*, 477 Mich at 1019. Because it is unclear whether the complainant actually made prior false accusations of sexual misconduct, we remand this matter to the trial court and direct the court to conduct an evidentiary hearing and make appropriate findings on the issue, namely, whether the complainant previously accused CF of sexual misconduct and admitted that her accusations were false. We shall retain jurisdiction to review the trial court's findings on remand.

Affirmed in part and remanded for further proceedings consistent with this opinion. We retain jurisdiction.

/s/ Kathleen Jansen
/s/ Jane M. Beckering
/s/ Colleen A. O'Brien

# Court of Appeals, State of Michigan

## ORDER

People of MI v Anthony Alston Jackson

Docket No.    339898

LC No.        2016-006045-01-FH

Kathleen Jansen
Presiding Judge

Jane M. Beckering

Colleen A. O'Brien
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 28 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, we direct the trial court to conduct an evidentiary hearing and make appropriate findings on whether the complainant previously accused CF of sexual misconduct and admitted that her accusations were false. The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

/s/ Kathleen Jansen

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

February 19, 2019
Date

Chief Clerk