*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 11, 2019

Plaintiff-Appellee,

v

No. 341463
Berrien Circuit Court
LC No. 2017-015171-FH

RYAN MATTHEW KRESTEL,

Defendant-Appellant.

Before: BECKERING, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

Defendant, Ryan Matthew Krestel, appeals as of right his jury trial convictions of manufacturing a controlled substance in violation of MCL 333.7401(2)(d)(*iii*) (amount of marijuana less than 5 kilograms or fewer than 20 plants), and maintaining a drug house, in violation of MCL 333.7405(1)(d). The trial court sentenced defendant to concurrent terms of 15 days in jail and 24 months of probation. We affirm.

In November of 2016, the Michigan State Police executed a search warrant at a home located on Spring Creek Road in Galien Township. The home was leased in the name of R.J. Serata, whom defendant states is his uncle. There was no one at the home when they executed the warrant. Police seized 32 marijuana plants from the unlocked basement of the home, 55 ounces of marijuana from the kitchen freezer, 20 ounces of marijuana from a bedroom cabinet, and 31 plants from a locked barn on the property. When one of the officers went back to the home a week later to serve paperwork on the homeowner/renter, a truck with an Illinois license plate was in the driveway and defendant was coming out of the front door of the house. Defendant advised the he was a medical marijuana patient and was also a caregiver to five other patients. Although defendant provided valid medical marijuana registry cards to the officer, he was charged with one count of manufacturing a controlled substance and maintaining a drug house.

Defendant moved for dismissal or, alternatively, an evidentiary hearing with respect to whether he was immune from prosecution under the Michigan Medical Marihuana Act (MMMA),[1] MCL 333.26421 *et seq.* He additionally brought a motion to dismiss the charges against him, asserting he was entitled to assert a defense under the MMMA. At the conclusion of an evidentiary hearing, the trial court ruled that defendant did not establish entitlement to immunity under MCL 333.26424 (§ 4 of the MMMA) because he was a resident of Illinois, rather than Michigan, and that defendant was further not entitled to an affirmative defense under MCL 333.26428 (§ 8 of the MMMA). The trial court also ordered that defense counsel was to pay $500 in sanctions for failing to make reasonable inquiry of defendant's residency and then, after the evidence established defendant's Illinois residency, continuing to attempt to advance a claim that he knew or should have known was false.

Defendant, thereafter, moved to disqualify the trial judge based on his assertion that the court demonstrated a strong bias against marijuana, medical marijuana, individuals who move to Michigan to participate in Michigan's medical marijuana program, defendant, and defense counsel. The motion was denied. This Court rejected defendant's emergency application for leave to appeal the order denying his motion. *People v Krestel*, unpublished order of the Court of Appeals issued August 22, 2017 (Docket No. 339332). Defendant proceeded to a jury trial, at the conclusion of which he was convicted, as stated above.

On appeal, defendant first argues that the trial court erred by rejecting defendant's § 4 claim for immunity under the MMMA. We disagree.

There are "two sections of the MMMA that provide separate protections from prosecution for offenses involving marijuana." *People v Kolanek*, 491 Mich 382, 394; 817 NW2d 528 (2012). Our Supreme Court explained in *Kolanek* that § 4, codified at MCL 333.26424, grants individuals possessing registry identification cards "broad immunity from criminal prosecution, civil penalties, and disciplinary actions . . . ." *Id*. at 394-395. Comparatively, § 8, codified at MCL 333.26428, "provides an affirmative defense to charges involving marijuana for its medical use . . . ." *Id*. at 396.

Under the MMMA, it is a defendant's burden to prove § 4 immunity by a preponderance of the evidence. *People v Hartwick*, 498 Mich 192, 217; 870 NW2d 37 (2015). We review the trial court's ruling on a motion to dismiss for abuse of discretion and will not set aside the trial court's factual findings unless we find them clearly erroneous, i.e., we hold a definite and firm conviction that the trial court made a mistake. See *People v Bylsma*, 493 Mich 17, 26; 825 NW2d 543 (2012). A trial court necessarily abuses its discretion when it makes an error of law. *People v Tackman*, 319 Mich App 460, 469; 901 NW2d 638 (2017) (quotation marks and citation omitted).

---

[1] "Although the statutory provisions at issue refer to 'marihuana' and 'usable marihuana,' by convention this Court uses the more common spelling 'marijuana' in its opinions." *People v Carruthers*, 301 Mich App 590, 593 n 1; 837 NW2d 16 (2013) (quotation marks and citation omitted).

Defendant argues that the trial court clearly erred when it held that defendant was not a resident of Michigan and, therefore, could not validly assert immunity or a defense under the MMMA. Citing *People v Jones*, 301 Mich App 566, 578-579; 837 NW2d 7 (2013), the trial court reasoned that defendant could not validly assert either § 4 immunity or a § 8 defense because he was not a resident of this state. Notably, *Jones* referred only to § 4 immunity when it held that "Michigan residency is a prerequisite to the issuance and valid possession of a registry identification card." See *Jones*, 301 Mich App at 578-579. Because one needs to be a Michigan resident in order to legally obtain a registry card, it necessarily follows, as this Court held in *Jones*, that one must be a Michigan resident in order to assert § 4 immunity, which requires that the individual validly possess a registry identification card. This finding is consistent with the MMMA.

MCL 333.26426 provides:

(a) The department shall issue registry identification cards to qualifying patients who submit the following, in accordance with the department's rules:

(1) A written certification;

(2) Application or renewal fee;

(3) Name, address, and date of birth of the qualifying patient, except that if the applicant is homeless, no address is required;

(4) Name, address, and telephone number of the qualifying patient's physician;

(5) Name, address, and date of birth of the qualifying patient's primary caregiver, if any;

(6) Proof of Michigan residency. For the purposes of this subdivision, a person shall be considered to have proved legal residency in this state if any of the following apply:

(*i*) The person provides a copy of a valid, lawfully obtained Michigan driver license issued under the Michigan vehicle code, 1949 PA 300, MCL 257.1 to 257.923, or an official state personal identification card issued under 1972 PA 222, MCL 28.291 to 28.300.

(*ii*) The person provides a copy of a valid Michigan voter registration.

Thus, in order to obtain a patient registry identification card, an individual must provide proof of Michigan residency in the form of a Michigan driver's license, or an official state personal identification card, or a valid Michigan voter registration. While a person may be homeless and still obtain a registry identification card under the language of the statute, that person must still present one of the specified proofs of Michigan residency in order to obtain the card. Moreover, if one presents a copy of a Michigan driver's license, a Michigan identification card or a Michigan voter registration as proof of residency, the forms of identification must be *valid and lawfully* obtained. MCL 333.26426(a)(6)(*i*) (emphasis added).

Here, based upon the evidence presented to the trial court and considering the forms of proofs accepted to establish Michigan residency, we cannot conclude that the trial court clearly erred in finding that defendant was not a Michigan resident. Defendant testified that he moved from Illinois to Michigan around March or April of 2014 and resided for the first year at a Creek Drive residence in New Buffalo, Michigan. He testified that he applied for a Michigan medical marijuana registry card "a couple of weeks" after he moved.

While defendant applied for and obtained a Michigan driver's license on March 14, 2014, that Michigan driver's license was cancelled the same day due to it being a nonresidential address. Admittedly, the licensing issue is confusing due to defendant presenting to the trial court a Michigan driver's license in his name issued March 14, 2014, and containing a New Buffalo address in Michigan, and bearing a sticker on the back of the license dated October 27, 2015, changing his address to 717 St. Joseph Drive, Suite 107 in St. Joseph, Michigan. That address was in actuality not a suite, but a post office box located at a UPS store in St. Joseph, some 25 or more miles from defendant's claimed New Buffalo home. It would appear, then, that defendant was permitted to change his address on his Michigan driver's license *after* it had been cancelled. However, a police officer testified at the evidentiary hearing that they must rely on LIEN records for licensing information and that the Secretary of State documents show that defendant's Michigan license was cancelled on March 14, 2014, for a nonresidential address. Additionally, Illinois licensing records show that defendant was issued a renewed driver's license in the state of Illinois on July 6, 2015.

Defendant testified that he resided at the New Buffalo address for a year, and then moved to a house rented by his uncle on Spring Creek Road in Galien Township in 2015, where he still resided.[2] He testified that he had a verbal agreement with his uncle to pay rent, but produced no records to show that he did pay rent or any other bills at the Spring Creek Road address. Defendant testified that he now had a Michigan driver's license with the Spring Creek Road address on it, but admitted that he did not obtain the license until after his November 2017 arrest in this matter.

Defendant confirmed that he drove a 2003 Ford pickup truck with an Illinois-issued license plate. He renewed that Illinois plate on July 7, 2016, using his parents' Illinois address. That vehicle, along with defendant, was at the Spring Creek Road residence when police returned to it approximately one week after the search warrant had been executed. Defendant testified that he now had a Michigan license plate on that vehicle, but admitted that the license plate had been obtained after his arrest.

A police officer testified at the evidentiary hearing that when he made contact with defendant at the Spring Creek Road address, he asked defendant where he lived or stayed. Defendant initially provided him the post office box address. The officer testified that he told defendant that was a post office box and asked again where he actually lived. Defendant told the

---

[2] Interestingly, defendant listed the post office box as his address when he signed the February 14, 2017 advice of rights form in this matter, but listed the Spring Creek Road address on his bail bond form.

-4-

officer that he "sometimes" lived at the Spring Creek Road address and seemed hesitant to provide any information as to his actual residence.

Further evidence produced at the evidentiary hearing indicating that defendant was a resident of Illinois included a checkbook bearing defendant's name and an Illinois address, current bank and credit cards issued to defendant by an Illinois bank, and a voter registration card from Illinois in defendant's name. And, while defendant testified that everything he owned was located at the Spring Creek home rented by his uncle and that his uncle resided at the home as well, only one of the two bedrooms in the home apparently contained clothing and other items that would indicate its regular use as a bedroom.

The trial court is charged with making the factual decision of whether a defendant seeking immunity under § 4 or a defense under § 8 possessed a *valid* registry identification card at the time of the charged offense. Our Supreme Court has held that, for purposes of a § 4 immunity hearing, the trial court acts "as both the finder of fact and arbiter of law." See *Hartwick*, 498 Mich at 214. "To determine whether a defendant is entitled to § 4 immunity, a trial court must make factual determinations, including whether the defendant has a valid registry identification card and whether he or she complied with the volume, storage, and medical use limitations." *People v Manuel*, 319 Mich App 291, 299; 901 NW2d 118 (2017) (quotation marks and citation omitted). To determine whether defendant had a valid registry identification card, the trial court must necessarily determine whether defendant had proven his Michigan residency. In this case, the trial court made a finding of fact based on credible evidence that defendant was not a resident of the State of Michigan and had acted fraudulently. Defendant presented no contrary evidence other than his own conclusory testimony, which the trial court found incredible. In fact, the trial court stated at the evidentiary hearing that defendant "was perhaps one of the least credible witnesses I've seen in 13 years on the bench." We defer to the trial court's superior ability to view the evidence and gauge the credibility of witnesses. See *People v Galloway*, 259 Mich App 634, 638; 675 NW2d 883 (2003).

A valid, legally obtained Michigan driver's license, or a Michigan personal identification card, or a valid Michigan voter registration card are the methods through which to establish patient residency under MCL 333.26426(a)(6)(*i*). It can be concluded from the evidence presented that defendant did not have a valid and lawfully obtained Michigan driver's license (or a valid Michigan personal identification card, or a valid Michigan voter registration card) and that he was not a Michigan resident under that section. He could thus not assert § 4 immunity as a marijuana patient.

Notably, Michigan residency is not specified as a requirement for primary caregivers. MCL 333.26426(d) states:

> The department shall issue a registry identification card to the primary caregiver, if any, who is named in a qualifying patient's approved application; provided that each qualifying patient can have no more than 1 primary caregiver, and a primary caregiver may assist no more than 5 qualifying patients with their medical use of marihuana.

However, in *Jones*, the court made no distinction, for residency requirement purposes, between patients and caregivers. The defendant in that case had a patient registry card as well as registry cards indicating she was a primary caregiver for other patients, but the Court found that she was not entitled to § 4 immunity *at all*. While at the time *Jones* was decided, there was no proof of Michigan residency requirement contained in MCL 333.26426, the *Jones* Court indicated that the subsequent change to MCL 333.26426 requiring proof of Michigan residency to obtain a registry identification card did not affect its analysis. *Id*. at 577 n 6. In its analysis, the *Jones* Court looked to the language in the MMMA referring to Michigan citizens (MCL 333.264229(c)) and a provision regarding medical use of marijuana by visitors to Michigan (MCL 333.26423(p)), indicating that if the MMMA were read not to require Michigan residency, there would be no need to make these references. *Id*. at 578-579. These cited references in the MMMA remain. We are therefore bound by the *Jones* Court analysis and its ultimate holding that it "affirm[s] the trial court's conclusion that Michigan residency is a prerequisite to valid possession of a registry identification card." *Id*. at 579.

Based upon the evidence and controlling case law, we are not convinced that the trial court's determination defendant was not a Michigan resident and thus not entitled to § 4 immunity as a patient or caregiver was in clear error. The fact that defendant *possessed* a patient registry card and caregiver identification cards makes no difference.

In *Tackman*, 319 Mich App at 463, defendant Tackman was issued a registry identification card in October of 2011 and became a caregiver sometime before September of 2014. In May of 2014, Tackman was convicted of a felony but was permitted, under his probationary terms, to continue to be a caregiver until August of 2014. *Id*. at 464. In September of 2014, Tackman was found to have a marijuana "grow" operation in his garage, possessing 21 marijuana plants and 81.1 grams of marijuana. He was thus charged with delivery or manufacture of marijuana and maintaining a drug house, among other things. *Id*. at 465-466. The trial court dismissed the charges against Tackman based upon § 4 of the MMMA, finding that Tackman possessed a caregiver card under the MMMA and the amount of marijuana found was within the statutory limits. *Id*. at 468. On appeal, this Court reversed the trial court's decision. We stated:

> It is undisputed that [] Tackman [] had been convicted of a felony before the September 2014 search[] of [his] home[]. For that reason, [he was not] eligible for § 4(b) caregiver immunity. That is necessarily so because MCL 333.26423(k) of the MMMA in part defines a "primary caregiver" or "caregiver" as one who "has not been convicted of any felony within the past 10 years and has never been convicted of a felony involving illegal drugs . . . ." [] Tackman [did not] meet that definition. *Id*. at 470.

This Court further found that Tackman was not eligible for patient immunity, because he possessed an amount of marijuana in excess of what was statutorily allowed for a patient. *Id*. The *Tackman* Court held that because definition of "caregiver" specifically restricts that status to persons who have not been convicted of any felony within the past 10 years, whether Tackman possessed a valid, unrevoked caregiver card at the time of his actions and conviction was irrelevant. "Accordingly, Tackman's May 2014 conviction deprived him of caregiver status in connection with the September 2014 search of his home and the criminal proceedings that

followed." *Id*. at 471-472. Similarly, here, § 4 immunity is restricted to Michigan residents and because defendant did not establish Michigan residency through a valid, lawfully obtained means, he could not be a qualified patient or primary caregiver and was not entitled to assert either such status.

This does not end our inquiry, however, because defendant has additionally argued that the trial court erred in rejecting his § 8 affirmative defense under the MMMA. "[T]he language of § 8 permits those individuals who are not registered cardholding patients to assert the § 8 affirmative defense." *Kolanek*, 491 Mich at 398. § 8 provides an affirmative defense to "patients" or "a person" generally. *Id*. § 4 and § 8 are thus "separate and distinct protections and require different showings . . . ." *Id*. at 401. Moreover, § 4 and § 8 are mutually exclusive, and a defendant is not required to establish the elements of § 4 in order to avail himself of the § 8 affirmative defense. *Id*. at 403.

§ 8 provides, in relevant part:

(a) Except as provided in section 7(b),1 a patient and a patient's primary caregiver, if any, may assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana, and this defense shall be presumed valid where the evidence shows that:

(1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

(2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

(3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition.

(b) A person may assert the medical purpose for using marihuana in a motion to dismiss, and the charges shall be dismissed following an evidentiary hearing where the person shows the elements listed in subsection (a). [MCL 333.26428]

"Alternatively, if a defendant establishes a prima facie case for this affirmative defense . . . but material questions of fact exist, then dismissal of the charges is not appropriate and the defense must be submitted to the jury." *Kolanek*, 491 Mich at 412. The trial judge "must preclude from

the jury's consideration evidence that is legally insufficient to support the § 8 defense" if no reasonable juror could conclude that defendant satisfied the elements constituting the defense. *Id.*

We see nothing in the statutory text of § 8 necessarily purporting to limit the availability of an affirmative defense solely to Michigan residents. However, we need not decide whether any residency requirement is applicable to a § 8 affirmative defense in this case because, without respect to residency, we are satisfied that defendant is unable to satisfy the requirements for validly asserting the defense.

At the evidentiary hearing, defendant was unable to present prima facie evidence that the quantity of marijuana he possessed "was not more than was reasonably necessary to ensure the uninterrupted availability" of marijuana for himself and those for whom he assisted as primary caretaker. MCL 333.26428(a)(2). In *Hartwick*, our Supreme Court rejected an argument that the specific volume limitations applicable to § 4 apply to determining reasonableness under § 8. See *Hartwick*, 498 Mich at 233-234. Our Supreme Court explained:

> A patient seeking to assert a § 8 affirmative defense may have to testify about whether a specific amount of marijuana alleviated the debilitating medical condition and if not, what adjustments were made to the consumption rate and the amount of marijuana consumed to determine an appropriate quantity. Once the patient establishes the amount of usable marijuana needed to treat the patient's debilitating medical condition, determining whether the patient possessed "a quantity of marihuana that was not more than was reasonably necessary to ensure [its] uninterrupted availability" also depends on how the patient obtains marijuana and the reliability of this source. This would necessitate some examination of the patient/caregiver relationship.
>
> The same analysis applies to primary caregivers seeking to present a defense under § 8. Primary caregivers must establish the amount of usable marijuana needed to treat their patients' debilitating medical conditions and then how many marijuana plants the primary caregiver needs to grow in order ensure "uninterrupted availability" for the caregiver's patients. This likely would include testimony regarding how much usable marijuana each patient required and how many marijuana plants and how much usable marijuana the primary caregiver needed in order to ensure each patient the "uninterrupted availability" of marijuana. [*Id.* at 234-235.]

Here, the trial court found, and the evidence supported, that defendant possessed approximately 65 usable ounces of marijuana, as well as 63 marijuana plants. The trial court accepted defendant's testimony that he and his patients would need one to two ounces of marijuana every two weeks (for a high-end total of six ounces per week) even though a law enforcement officer testified that this amount, in his experience, was likely excessive. The trial court determined that the 65 ounces of usable marijuana possessed by defendant was far in excess of a reasonable quantity. We agree.

Defendant's testimony failed to undertake any searching review of the amount of marijuana needed to individually treat his five patients' debilitating medical conditions and to determine how many marijuana plants were necessary to maintain "uninterrupted availability." At most, defendant spoke in generalities and none of his patients appeared to testify. In his brief on appeal, defendant makes no attempt to point to any testimony setting forth the reasonableness of the quantity of marijuana possessed in relation to "how much usable marijuana the primary caregiver needed in order to ensure *each* patient" an uninterrupted supply. See *id*. at 235 (emphasis added). Therefore, we hold that the trial court properly rejected defendant's assertion of a § 8 defense because no reasonable juror, on this evidence, could have concluded that the amount of marijuana defendant possessed was reasonable in relation to the medical needs of defendant and his patients.

Finally, defendant argues that he did not receive a fair trial. He asserts a variety of grounds, none of which merit relief.

First, defendant maintains that he was denied due process and a fair proceeding because the chief circuit court judge, who reviewed the trial judge's denial of defendant's motion for disqualification, did not allow an opportunity for briefing or oral argument and decided the matter without the benefit of a transcript of the denial of defendant's motion.[3] Because the chief judge's review in this case was de novo, the resulting decision was the product of an independent judicial view of defendant's motion and no error is attributable to the chief judge's asserted inability to review the trial court judge's initial impressions or decision-making process. Similarly, this Court has held that the inability to present oral argument is, at worst, harmless error because courts "decide cases without oral argument on a routine basis" and, under the court rules, briefs filed in the circuit court "should contain all of the arguments, issues, facts and law necessary for a proper resolution of the case." See *Westland v Kodlowski*, 298 Mich App 647, 662; 828 NW2d 67 (2012), reversed in part on other grounds 495 Mich 871 (2013).

Next, defendant argues the substantive merits of his disqualification motion, principally arguing that the trial judge showed a bias toward marijuana or marijuana users. "Disqualification pursuant to the Due Process Clause is only required 'in the most extreme cases.' " *In re MKK*, 286 Mich App 546, 567; 781 NW2d 132 (2009), quoting *Cain v Dep't of Corrections*, 451 Mich 470, 498; 548 NW2d 210 (1996).

> Under MCR 2.003(C)(1)(a), a judge must be disqualified from hearing a case in which he or she cannot act impartially or is biased against a party. "[J]udicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a 'deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality.' " *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001), quoting *Cain*, 451

---

[3] Where a judge denies a motion asserting the judge is disqualified from hearing a case, MCR 2.003(D)(3)(a)(*i*) allows the defendant to request that the challenged judge "refer the motion to the chief judge, who shall decide the motion de novo."

Mich at 496 (quotation marks and citation omitted). In fact, "a trial judge's remarks made during trial, which are critical of or hostile to counsel, the parties, or their cases, ordinarily do not establish disqualifying bias." *In re MKK*, 286 Mich App at 567. Under MCR 2.003(C)(1)(b), the test for determining whether there is an appearance of impropriety is " 'whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired.' " *People v Aceval*, 486 Mich 887, 889; 781 NW2d 779 (2010) (statement by HATHAWAY, J., quoting *Caperton* [*v Massey*, 556 US 868, 888; 129 S Ct 2252; 173 L Ed 2d 1208 (2009)]. [*Kern v Kern-Koskela*, 320 Mich App 212, 231-232; 905 NW2d 453 (2017).]

Although defendant is able to point to several statements disparaging marijuana evidently made by the trial judge during sentencings of other defendants, he provides no foundation for the contexts or circumstances of these cherry-picked statements. In any event, this Court has held that "[a] generalized hostility toward a class of claimants does not present disqualifying bias." *MKK*, 286 Mich App at 566. Similarly, defendant argues that the trial judge interrupted defense counsel repeatedly. However, defense counsel fails to note that, at the very inception of the first day of the motion hearing, the trial judge remarked, after defense counsel interrupted him, that in the trial judge's experience, defense counsel has "a terrible habit" of interrupting the court that he should try to avoid. None of these alleged sources of bias overcome the presumption of impartiality by rising to the level of undermining, or appearing to undermine, the trial judge's integrity, impartiality and competence. *Kern-Koskela*, 320 Mich App at 231-232.

Defendant also argues that the prosecution did not provide defense counsel with documentation evidencing that defendant maintained his residence in Illinois, thereby violating defendant's constitutional rights. This argument also fails. Defendant had no general constitutional right to discovery, and due process requires only that the prosecution "disclose evidence in its possession that is exculpatory and material," not evidence that is potentially incriminating. See *People v Jackson*, 292 Mich App 583, 590-591; 808 NW2d 541 (2011), citing *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). Again, the only items defendant sought related to his alleged residency, evidence that was within defendant's own knowledge or ability to obtain and was not exculpatory in nature.

Next, defendant claims error because the trial court did not agree to a continuance after defense counsel informed it that defendant's medical doctor recently underwent shoulder surgery and was unable to appear at the scheduled motion hearing. Again, we find no merit in this contention. We review a trial court's ruling on a defendant's request for an adjournment or continuance for an abuse of discretion. *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000).

"A motion for adjournment must be based on good cause." *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003). MCR 2.503(C), which governs the granting of adjournments on the basis of the unavailability of a witness or evidence, provides:

> (1) A motion to adjourn a proceeding because of the unavailability of a witness or evidence must be made as soon as possible after ascertaining the facts.

(2) An adjournment may be granted on the ground of unavailability of a witness or evidence only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence.

Accordingly, in light of MCR 2.503, this Court has opined that

to invoke the trial court's discretion to grant a continuance or adjournment, a defendant must show both good cause and diligence. *People v Taylor*, 159 Mich App 468, 489; 406 NW2d 859 (1987). "Good cause" factors include "whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments." *People v Lawton*, 196 Mich App 341, 348; 492 NW2d 810 (1992). Even with good cause and due diligence, the trial court's denial of a request for an adjournment or continuance is not grounds for reversal unless the defendant demonstrates prejudice as a result of the abuse of discretion. *Snider*, 239 Mich App at 421-422. [*Coy*, 258 Mich App at 18-19.]

In this case, defendant did not take diligent steps to produce the medical doctor. Defense counsel admitted that he learned of the doctor's surgery "relatively recently," without stating exactly when. We also note that the trial court held a case conference just a few weeks prior to the evidentiary hearing. Defendant did not promptly inform the prosecution or the trial court about the potential absence of defendant's witness, despite this period of time and the ample opportunity to do so. Accordingly, defense counsel's request for an adjournment was not "made as soon as possible after ascertaining the facts," as required by MCR 2.503(C)(1). We also note that defense counsel did not attempt to subpoena the witness, although it was his right to do so. See MCR 2.506. Had defense counsel subpoenaed him, the doctor could have asserted the impossibility of his attendance due to medical reasons, at which point the trial court would have been in a position to conduct a special hearing on the issue of his attendance or simply adjourn the hearing to another date. See MCR 2.506(C)(3). We also note that defense counsel could provide no assurances to the trial court when, or if, the witness would appear. Given defendant's lack of diligence, we conclude that the trial court did not abuse its discretion in denying defendant's request for an adjournment.

We also uphold the trial court's imposition of a $500 sanction against defense counsel for failing to conduct a reasonable inquiry as to his client's residency. We review defendant's claim on this issue for clear error. See *In re Costs & Attorney Fees*, 250 Mich App 89, 94; 645 NW2d 697 (2002). "MCR 2.114(D)[4] imposes various requirements of good faith and reasonable inquiry upon the signatories of legal pleadings." *People v Herrera (On Remand)*, 204 Mich App 333, 337; 514 NW2d 543 (1994). The court rule expressly permits the imposition of sanctions against attorneys who fail to comply with these requirements in criminal cases. *Id*. at 337-338. More specifically,

---

[4] We note that MCR 2.114 was repealed effective September 1, 2018. The existing language transferred to MCR 1.109. MCR 2.114 remained in effect at the time the trial court imposed sanctions.

[t]he frivolous-claim-or-defense provisions of the Michigan Court Rules . . . "impose an affirmative duty on each attorney to conduct a reasonable inquiry into the factual and legal viability of a pleading before it is signed." *Attorney General v Harkins*, 257 Mich App 564, 576; 669 NW2d 296 (2003). The reasonableness of the attorney's inquiry is determined by an objective standard, not the attorney's subjective good faith. *Id*. The purpose of imposing sanctions for asserting a frivolous action or defense is to deter parties and their attorneys from filing documents or asserting claims or defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose. *BJ's & Sons Constr Co, Inc v Van Sickle*, 266 Mich App 400, 405; 700 NW2d 432 (2005) (quotation marks and citation omitted). A court must determine whether a claim or defense is frivolous on the basis of the circumstances at the time it was asserted. *Robert A. Hansen Family Trust v. FGH Indus, LLC*, 279 Mich App 468, 486; 760 NW2d 526 (2008). [*Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 731-732; 909 NW2d 890 (2017).]

During the first day of the two-day evidentiary hearing, defense counsel repeatedly complained that the prosecution had not provided him with notice that it possessed documentary records reflecting that defendant lived in Illinois and not in Michigan. In response, the trial court stated that, "[i]n doing [his] research and preparation for this motion, [defense counsel] could have very easily requested, potentially, false and fraudulent documents filed by [his] client." After hearing defendant's testimony, the trial court remarked that defendant "was perhaps one of the least credible witnesses" the trial court had seen over 13 years on the bench, and specifically asked defense counsel whether he wished to proceed and whether defense counsel still maintained that the motion was in good faith. The trial court warned that it intended to sanction defense counsel if the "absurd" evidence continued. The trial court also noted that defense counsel had "demonstrated a history in this court of filing baseless, groundless pleadings," which increased the cost of litigation and caused unnecessary delay.

On these facts, we conclude that the trial court did not clearly err in concluding that defendant's asserted defenses were frivolous. Defense counsel, before signing the motion, was subject to an affirmative duty to conduct a reasonable inquiry into the factual and legal viability of the purported defense. Despite this affirmative obligation, defense counsel essentially admitted that he undertook no investigation and simply maintained that his client told him that he lived in Michigan. Defense counsel did not state whether he undertook *any* investigation, let alone a reasonable inquiry under the circumstances. Other than defendant's own testimony, which the court found completely lacking in credibility, the defense did not present any other witness or documentary evidence supporting a claim of residency or, for that matter, the other necessary elements supporting the asserted defenses.[5]

---

[5] There was no explanation for why defense counsel was so unprepared to refute the prosecution's strategy of focusing on defendant's residency, which was a key component of questioning during defendant's preliminary examination. The prosecutor even advanced this exact argument in support of binding over the charges.

In his final argument, defendant contends that the prosecutor violated a promise not to mention the MMMA during closing arguments at the jury trial when the prosecutor stated that "[t]here's been no testimony or evidence that this was somehow a legal grow operation." We disagree. First, defendant is unable to point to any such promise in the record. Moreover, as the prosecution correctly points out, our Supreme Court has held that a prosecutor "may observe that the evidence against the defendant is 'uncontroverted' or 'undisputed.' " *People v Fields*, 450 Mich 94, 115; 538 NW2d 356 (1995). Assuming, as defense counsel asserted at trial, that the prosecutor's comment had the effect of suggesting that defendant carried any burden of proof, the creation of such an inference would be error. However, we do not read the comment as creating any such inference and, even if it did, the trial court specifically instructed the jury to follow only the trial court's instructions on the applicable law. This Court presumes that the jury followed this instruction, further curing any possible error stemming from the prosecutor's statement. See *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Affirmed.


/s/ Jane M. Beckering
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens